[No. C047124. Third Dist. Apr. 4, 2005.]

KAISER FOUNDATION HOSPITALS et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
DEBBIE DENNIS-JOHNSON, Real Party in Interest.

## Counsel

Bingham McCutchen, Ross E. Campbell, Beth McGowen, Katharine West and David M. Heilbron for Petitioners Kaiser Foundation Hospitals, Kaiser Foundation Health Plan, Inc., Jack Rozance, M.D., and Robert Azevedo, M.D.

Quinn Emanuel Urquhart Oliver & Hedges, Samuel B. Shepherd and Philip J. Wang for Petitioner The Permanente Medical Group, Inc.

No appearance for Respondent.

Carter & Schear, Stephen D. Schear, Jana Carter; and Eric Weaver for Real Party in Interest.

OPINION

**ROBIE, J.**—In this writ proceeding, we are called on to decide whether the failure of a hospital to begin a peer review hearing within the 60-day period provided by subdivision (h) of Business and Professions Code[1] section 809.2 excuses the physician who is subject to peer review from completing the peer review process and permits the physician to bring an immediate tort action for damages and other relief in the superior court. We conclude the answer to that question is "no." The hospital's failure to begin the hearing on time, without more, does not render the administrative remedy of the peer review process inadequate or unavailable and does not constitute such a deprivation of "fair procedure" that the physician is entitled to escape peer review altogether.

 We also conclude that a physician facing peer review cannot avoid the process by claiming that the hearing officer and/or panel members appointed by the hospital are impermissibly biased. Because subdivision (c) of section 809.2 provides a method for raising the issue of bias in the administrative proceeding, the exhaustion of administrative remedies doctrine requires the physician to raise the issue of bias before the hearing officer. The physician cannot escape that requirement simply by claiming the hearing officer is biased.

Based on these conclusions, we will issue a peremptory writ of mandate granting the relief petitioners seek.

### FACTUAL AND PROCEDURAL BACKGROUND

We begin with our cast of players. Petitioner Kaiser Foundation Hospitals (KFH) is a California not-for-profit public benefit corporation that owns Kaiser Foundation Hospital—Sacramento/Roseville, a licensed general acute care hospital (the Hospital). Petitioner Kaiser Foundation Health Plan (KFHP) is a health care service plan that contracts with KFH to provide hospital services to KFHP's members. Petitioner Jack Rozance is the chief of staff of the professional staff at the Hospital. Petitioner Robert Azevedo is the chief of the department of obstetrics and gynecology at the Hospital. Petitioner The Permanente Medical Group (TPMG) is a professional corporation that contracts with KFHP to provide medical services to KFHP's members. Finally, real party in interest Debbie Dennis-Johnson is a licensed physician specializing in obstetrics and gynecology (OB/GYN).[2]

---

[1] All further statutory references are to the Business and Professions Code unless otherwise indicated.

[2] In her answer, real party in interest refers to herself as Dr. Dennis. We will do the same.

In November 2001, TPMG hired Dr. Dennis as an associate physician. At the same time, Dr. Dennis joined the professional staff of the Hospital and obtained provisional OB/GYN privileges there.

On March 19, 2003, Dr. Azevedo informed Dr. Dennis that the Hospital was summarily suspending her gynecological surgery privileges.[3] Shortly thereafter, TPMG terminated Dr. Dennis's employment.[4]

By letter dated March 31, 2003, Dr. Rozance notified Dr. Dennis that she was entitled to request a hearing on the termination of her employment. Dr. Dennis requested that hearing on April 8, 2003. About a week later, Dr. Dennis received another letter from Dr. Rozance notifying her that she was entitled to request a hearing on the summary suspension of her surgical privileges. Dr. Dennis requested that hearing on April 29, and the Hospital received the request the following day.

Under the Hospital's bylaws and TPMG's policy manual, Dr. Dennis was entitled to a single hearing addressing both the termination of her employment and the suspension of her surgical privileges, because both events arose from the same set of circumstances. The hearing was supposed to begin within 60 days after receipt of Dr. Dennis's requests for a hearing. Thus, at least with respect to the suspension of Dr. Dennis's surgical privileges, the hearing was supposed to begin by the end of June.[5]

Under the Hospital's bylaws, the hearing was to be held before an ad hoc judicial review committee (JRC), appointed by the chief of staff (Dr. Rozance), the members of which were to serve "as the initial finder of fact in this hearing and appeal process." The members of the JRC were to be other practitioners "who shall gain no direct financial benefit from the outcome, who have not acted as accusers, investigators, fact finders or initial decision makers in the same matter, and who have not previously taken an active part in the consideration of the matter contested." The bylaws also

---

[3] According to Dr. Dennis, Dr. Azevedo initially told her *all* of her surgical privileges had been suspended; however, she admits that "[e]ven after [she] was suspended . . . , [her] privileges to do obstetrical surgery, labor and delivery, and non-surgical gynecological admissions remained intact."

[4] Although the parties agree in their pleadings before this court that Dr. Dennis's employment was terminated on March 31, 2003, effective April 30, 2003, it appears from the record her employment was actually terminated on March 21, effective April 20.

[5] It does not appear from the record exactly when TPMG received Dr. Dennis's request for a hearing on the termination of her employment.

provided for appointment of an attorney as a hearing officer to preside over the hearing. TPMG's policy manual provided for similar requirements.

On May 6, 2003, the Hospital's attorney, Ross Campbell, wrote to Dr. Dennis's attorney, Stephen Schear, and named two attorneys who were under consideration for appointment as the hearing officer. Campbell stated he wanted to talk to Schear about the two candidates "in the near future." Although the Hospital was entitled to set the hearing date unilaterally, it is Campbell's practice to set hearing dates for hospital peer review hearings by mutual agreement of counsel. Thus, Campbell also stated in his letter that he wanted to talk to Schear about "potential hearing dates."

The following day, Schear responded regarding the hearing officer candidates, objecting to one of them, and indicated he would be out of the office until May 19. He offered no response regarding potential hearing dates.

On May 13, 2003, a joint notice of charges issued, setting forth the reasons for the adverse actions taken against Dr. Dennis. The notice referred to various problems that allegedly occurred in eight of her cases, including, among other things, improper surgical technique, inadequate informed consent processing, and inadequate charting. The notice further stated that "[s]election of a hearing panel and hearing officer is proceeding as well as the determination of dates for the hearing, which will be coordinated with your attorney. Once these details have been finalized, you will be informed in writing."

On May 28, 2003, Schear wrote to Campbell, objecting to the Hospital's second hearing officer candidate on the ground there was "a significant risk that [he] will favor Kaiser and/or TPMG at the hearing in order to continue receiving work from them." Schear "continue[d] to insist that the hearing officer and the panelists be chosen by mutual agreement rather than by [Campbell] or [the Hospital], in order to ensure a fair and objective process." Schear further stated that Dr. Dennis did "not consent to and has not waived any of her procedural rights, including her right to compliance with policies, bylaws, and statutes requiring timely notice and hearing."

On June 13, 2003, Campbell responded to Schear, noting that while he "naturally prefer[ed] to work with [Schear] so that both the hearing officer and panelists are acceptable as that will make the process run more efficiently," he would "not agree to a hearing officer and panelist[s] chosen by

'mutual agreement.' "[6] He further stated that Schear "obviously ha[d] a right to voir dire any hearing officer or panel member and to disqualify any such individual for a valid reason as provided for in Section 809.2."[7] In closing his letter, Campbell suggested a telephone discussion, noting they had "a number of things to discuss, the most important of which is identifying hearing dates that are workable."

The attorneys apparently had that telephone discussion on June 19. Schear followed up that conversation with a letter the next day, in which he insisted it was "plainly a violation of due process for [the Hospital] and TPMG to unilaterally appoint the hearing officer and panel members." Citing *Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017 [119 Cal.Rptr.2d 341, 45 P.3d 280], Schear asserted that the Hospital's bylaws and TPMG's policies "violate due process on their face," and he insisted that for this reason Dr. Dennis was "not required to submit to the hearing process because it is an inadequate remedy."

On June 27, 2003, Campbell responded to Schear, asserting *Haas* was inapplicable because, among other things, it "dealt with due process concepts applicable to governmental agencies." Campbell asserted the Hospital's selection of the hearing officer and members of the JRC was consistent with state law, and any objections Dr. Dennis had could be addressed to the hearing officer pursuant to subdivision (c) of section 809.2. Campbell agreed with Schear's "apparent wish to proceed with the hearing as soon as reasonably possible" and stated they would "try to have a panel selected and a hearing officer chosen by the time [Schear] return[ed] from [his] early July vacation."

Less than a week later, on July 2, 2003, Dr. Dennis filed a complaint in the superior court for declaratory and injunctive relief and damages against KFH, KFHP, Dr. Rozance, and Dr. Azevedo (the Kaiser action) (case No. 03AS03739).[8] Dr. Dennis sought damages on a variety of tort theories (e.g., race and gender discrimination in violation of the Fair Employment and

---

[6] Subdivision (a) of section 809.2 provides that a peer review hearing must be held "*as determined by the peer review body,* before a trier of fact, which shall be an arbitrator or arbitrators selected by a process mutually acceptable to the licentiate and the peer review body, *or* before a panel of unbiased individuals who shall gain no direct financial benefit from the outcome, who have not acted as an accuser, investigator, factfinder, or initial decisionmaker in the same matter, and which shall include, where feasible, an individual practicing the same specialty as the licentiate." (Italics added.)

[7] Subdivision (c) of section 809.2 provides: "The licentiate shall have the right to a reasonable opportunity to voir dire the panel members and any hearing officer, and the right to challenge the impartiality of any member or hearing officer. Challenges to the impartiality of any member or hearing officer shall be ruled on by the presiding officer, who shall be the hearing officer if one has been selected."

[8] We will refer to these four parties jointly as Kaiser.

Housing Act), alleging, among other things, that Kaiser had retaliated against her for complaining of harassment by Dr. Azevedo. In her first of 20 "counts," Dr. Dennis sought a judicial declaration that she was "not required to exhaust [the Hospital's] hearing process," on the ground the process would deny her "a fair hearing before a neutral and unbiased decision-maker" and on the ground "it was not made available to her within the time required by statute and due process."[9]

On July 24, 2003, Campbell wrote to Schear and notified him that a hearing officer and JRC had been selected.

On September 23, 2003, Campbell wrote to the hearing officer and requested a ruling that Dr. Dennis had waived her right to a hearing regarding the termination of her employment with TPMG because she had failed "to move forward with the hearing regarding the termination action for the past six months." On October 13, the hearing officer wrote to Campbell and Schear, refusing a request from Schear that the hearing officer recuse himself from the matter and ruling that Dr. Dennis had not waived her right to a hearing on her termination.

On December 8, 2003, Dr. Dennis filed a motion for summary adjudication in the Kaiser action on her cause of action for declaratory relief. She argued she was entitled to a judicial declaration that she was not required to exhaust her administrative remedy because: (1) she did not get a hearing within 60 days; (2) the Hospital's hearing process violates due process requirements of impartiality; and (3) she would be irreparably harmed if she were required to pursue the hearing process.

On December 19, 2003, Dr. Dennis filed a complaint in the superior court against TPMG seeking reinstatement to her employment (the TPMG action) (case No. 03AS06960). Like her complaint in the Kaiser action, Dr. Dennis's complaint against TPMG included a cause of action for declaratory relief seeking a declaration that she was not required to proceed with the peer review hearing process.

On January 30, 2004, Kaiser filed a cross-motion for summary adjudication in the Kaiser action on Dr. Dennis's declaratory relief cause of action, essentially seeking a declaration that Dr. Dennis was required to exhaust the peer review hearing process before resorting to the courts.[10] This motion was

---

[9] Dr. Dennis later filed an amended complaint in the Kaiser action, which, for our purposes, presents the same issues as her original complaint.

[10] Kaiser's motion also addressed the second cause of action in Dr. Dennis's complaint. The superior court's denial of that aspect of Kaiser's motion is not before us.

soon followed by an identical motion in the TPMG action. The Kaiser action and the TPMG action were then consolidated for the purpose of law and motion, which ensured that all three summary adjudication motions would be heard together.

A hearing on the summary adjudication motions was held on April 28, 2004, and the superior court took the matter under submission.[11] On May 24, the superior court issued its ruling denying Kaiser's and TPMG's motions and granting Dr. Dennis's motion. That ruling was incorporated into formal orders entered in both actions on July 1, 2004. The court concluded that because a hearing "was not timely held," and Dr. Dennis did not consent to the delay, Dr. Dennis was not required to exhaust her administrative remedy before pursuing her superior court actions. According to the court, because "no viable administrative remedy contemplated by Business and Professions Code section 809, et seq., was ever made available to [Dr. Dennis] on a timely basis," "there was no administrative remedy that she could be required to exhaust before resorting to the court." The court commented on Dr. Dennis's alternate argument that she should be excused from completing the peer review process because it " 'does not square with the requirements of due process' "; however, the court concluded that a ruling on that argument was "unnecessary to [its] decision."

Kaiser and TPMG filed a joint petition for a writ of mandate or prohibition or other appropriate relief in this court, seeking to compel the superior court to set aside its orders on the summary adjudication motions and "restraining the Respondent Court from exercising jurisdiction vested in the peer review panel and hearing officer." We issued an alternative writ and stayed all further proceedings in both actions.

DISCUSSION

I

*Statutory Background*

We begin with an overview of the peer review process.

"Under state law, a licensed hospital facility must have 'a formally organized and self-governing medical staff responsible for "the adequacy and

---

[11] In the interim, in March 2004 the superior court had issued a preliminary injunction ordering TPMG to reinstate Dr. Dennis to her employment effective March 4, 2004, pending a pretermination hearing. The court authorized TPMG to place Dr. Dennis on paid administrative leave.

quality of the medical care rendered to patients in the hospital." [Citation.]' [Citations.] The medical staff acts primarily through a number of peer review committees, which, along with other responsibilities, assess the performance of physicians currently on staff . . . . [Citation.] If a peer review committee recommends that the privileges of the physician be restricted or revoked because of the manner in which he or she exercised those privileges, a series of procedural mechanisms kick into play—all governed by state law. [Citations.]

"In 1989, the state Legislature enacted California Business and Professions Code section 809 et seq. for the purpose of opting out of the federal Health Care Quality Improvement Act of 1986 (42 U.S.C. § 11101 et seq.), which was passed to encourage physicians to engage in effective peer review. California chose to design a peer review system of its own, and did so with the enactment of these sections. [Citation.] Section 809 provides generally that peer review, fairly conducted, is essential to preserving the highest standards of medical practice and that peer review which is not conducted fairly results in harm both to patients and healing arts practitioners by limiting access to care. [Citation.] The statute thus recognizes not only the balance between the rights of the physician to practice his or her profession and the duty of the hospital to ensure quality care, but also the importance of a fair procedure, free of arbitrary and discriminatory acts. [Citation.]

"The statutory scheme delegates to the private sector the responsibility to provide fairly conducted peer review in accordance with due process,[12] including notice, discovery and hearing rights, all specified in the statute. [Citations.] A hospital is required to establish high professional and ethical standards and to maintain those standards through careful selection and review of its staff. [Citation.] To comply with the statute's mandate, the hospital's medical staff must adopt bylaws that include formal procedures for ' "the evaluation of staff applications and credentials, appointments, reappointments, assignment of clinical privileges, appeals mechanisms and such other subjects or conditions which the medical staff and governing body deem appropriate." [Citation.]' [Citation.] It is these bylaws that govern the parties' administrative rights. [Citation.] Section 809, subdivision (a)(8) provides that medical staff bylaws in an acute care hospital setting shall include written provisions implementing sections 809 to 809.8." (*Unnamed Physician v. Board of Trustees* (2001) 93 Cal.App.4th 607, 616–617, fn. omitted [113 Cal.Rptr.2d 309].)

---

[12] As we shall explain, used in this context the term "due process" is something of a misnomer. A more accurate term would be "fair process."

The peer review process provided for in section 809 et seq. applies to "a final proposed action of a peer review body for which a report is required to be filed under Section 805," and a section 805 report must be filed when "[a] licentiate's membership, staff privileges, or employment is terminated or revoked for a medical disciplinary cause or reason." (§§ 809.1, subd. (a), 805, subd. (b)(2); see §§ 809.2, 809.3, subd. (a), 809.4, subd. (a).) Thus, the peer review process applies to the termination of a physician's employment just as much as it does to the restriction or revocation of a physician's hospital privileges.

## II

### *The 60-day Deadline*

■ Section 809.2 sets forth various requirements that apply when a physician requests a peer review hearing. With respect to the timing of the hearing, subdivision (h) of section 809.2 (hereafter section 809.2(h)) provides: "A hearing under this section shall be commenced within 60 days after receipt of the request for hearing, and the peer review process shall be completed within a reasonable time, after a licentiate receives notice of a final proposed action or an immediate suspension or restriction of clinical privileges, unless the arbitrator or presiding officer issues a written decision finding that the licentiate failed to comply with [provisions governing disclosure obligations] in a timely manner, or consented to the delay."

Consistent with section 809.2(h), the Hospital's bylaws provided as follows: "After consultation with the members of the Judicial Review Committee and the practitioner, the Chief of Staff shall fix the place and time of the hearing, on a date within sixty (60) days of the Professional Staff's receipt of the practitioner's request for hearing." Similarly, TPMG's policy manual provided: "If the practitioner requests a hearing, it must be commenced within sixty (60) calendar days of receipt of the request."

It is undisputed that on April 30, 2003, the Hospital received Dr. Dennis's request for a hearing regarding the suspension of her surgical privileges. Thus, pursuant to section 809.2(h) and the Hospital's bylaws (and absent a written finding by the hearing officer that Dr. Dennis had failed to comply with her disclosure obligations in a timely manner or consented to a delay), the hearing was required to begin by June 29. It did not.

Likewise, while the date TPMG received Dr. Dennis's request for a hearing regarding termination of her employment does not appear in the record, it is

undisputed the hearing thereon did not begin in the time required by section 809.2(h). The issue here is the effect of the failure to begin the hearing by the statutory deadline.

In their petition, Kaiser and TPMG frame the issue before us as whether the 60-day deadline for commencing a peer review hearing under section 809.2(h) is "mandatory" or "directory." This formulation of the issue refers to a well-established body of case law addressing the consequence of a government agency's or officer's failure to act as required by law. As our Supreme Court explained in *Morris v. County of Marin* (1977) 18 Cal.3d 901 [136 Cal.Rptr. 251, 559 P.2d 606]: "[T]he 'directory' or 'mandatory' designation . . . denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates. [Citations.] [¶] Thus, for example, if a court determines that a city council's failure to comply with a particular procedural step in enacting an ordinance does not invalidate the resulting ordinance, which is the culmination of those steps, the procedural requirement is referred to as 'directory.' " (*Id.* at pp. 908–909, fn. omitted.) "[T]he 'directory-mandatory' distinction is concerned only with whether a particular remedy—invalidation of the ultimate governmental action—is appropriate when a procedural requirement is violated." (*Id.* at p. 908, fn. 4, italics omitted.)

Here, Dr. Dennis does not seek to invalidate a governmental action based on the failure of a government agency or officer to comply with a particular procedural requirement applicable to that agency or officer. Rather, she seeks to proceed with superior court actions for damages and other relief against Kaiser and TPMG—private entities—without first completing the peer review process. Thus, the primary question before us is this: If a peer review hearing is not "commenced within 60 days" as required by section 809.2(h), and the presiding officer has not found in writing that the physician failed to comply with her disclosure obligations in a timely manner or consented to the delay, is the physician excused from completing the peer review process and allowed to proceed immediately with an action for damages and/or other relief in the superior court? To answer that question, we turn to the exhaustion of administrative remedies doctrine.

III

*Exhaustion of Administrative Remedies*

"The doctrine of exhaustion of administrative remedies requires that where a remedy before an administrative agency is provided by statute,

regulation, or ordinance, relief must be sought by exhausting this remedy before the courts will act." (2 Cal.Jur.3d (1999) Administrative Law, § 668, pp. 95–96.) "Exhaustion of available administrative remedies is a condition precedent to obtaining judicial relief, even though the party has a cause of action which is properly triable in the courts." (*Id.* at p. 98, fn. omitted.) "Where an administrative remedy is provided by statute, relief must be sought from the administrative body and the remedy exhausted before the courts will act; a court violating the rule acts in excess of jurisdiction." (*Hollon v. Pierce* (1967) 257 Cal.App.2d 468, 475 [64 Cal.Rptr. 808].)

■ In *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410], the California Supreme Court held the exhaustion of administrative remedies doctrine applies to hospital peer review proceedings. According to the court, "before a doctor may initiate litigation challenging the propriety of a hospital's denial or withdrawal of privileges, he must exhaust the available internal remedies afforded by the hospital."[13] (*Id.* at p. 469.)

■ As another California appellate court recently explained, "a doctor who is challenging the propriety of a hospital's denial or withdrawal of staff privileges must pursue the internal remedies afforded by that hospital to a final decision on the merits before resorting to the courts for relief. [Citations.] This requirement both accords recognition to the expertise of the organization's quasi-judicial tribunal and promotes judicial efficiency by unearthing the relevant evidence and providing a record that the court may review. [Citation.] 'The exhaustion doctrine "is not a matter of judicial discretion, but is a fundamental rule of procedure" [citation] under which "relief must be sought from the administrative body and this remedy exhausted before the courts will act" [citation].' " (*Unnamed Physician v. Board of Trustees, supra,* 93 Cal.App.4th at pp. 619–620.)

Dr. Dennis points to nothing in the statutes governing the peer review process that exempts a physician from exhausting that process simply because the hospital or employer fails to begin the hearing within 60 days of receiving the physician's request for a hearing. Had the Legislature intended such a result, it could have specifically provided for that result, as it has in other

---

[13] Although the decision in *Westlake* applied to the "fair procedure" a hospital was required to provide under California common law (*Westlake Community Hosp. v. Superior Court, supra,* 17 Cal.3d at p. 468), rather than to the statutory peer review procedure now required by section 809 et seq., neither side in this action disputes that the exhaustion doctrine applies under the new statutory scheme as much as it did under the previous common law scheme.

contexts. For example, Government Code section 18671.1 specifies that the California State Personnel Board must render a decision following a hearing or investigation of a state employee's appeal from a departmental disciplinary action within six months from the date the petition is filed or 90 days from the time the matter is submitted following investigation or hearing, whichever is less. (See *California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1137–1138 [43 Cal.Rptr.2d 693, 899 P.2d 79].) The statute further "provides that if the Board does not render a decision within the time limits, the employee will be deemed to have exhausted all available administrative remedies."[14] (See *California Correctional Police Officers Assn.*, at p. 1138.) No similar language appears anywhere in the peer review statutes.

■ With nothing in the applicable statutes to support her argument, Dr. Dennis relies on some of the traditional exceptions to the exhaustion doctrine. "A limited number of exceptions to the exhaustion doctrine have long been recognized in California. Generally, these exceptions apply when the subject matter of the controversy lies outside the administrative agency's jurisdiction, when pursuit of an administrative remedy would result in irreparable harm, when the administrative remedy is inadequate or unavailable, and when the administrative remedy is futile as the aggrieved party can positively state what the administrative agency's decision in his particular case would be. The exhaustion doctrine also has not been applied where the agency indulges in unreasonable delay, or, at least in one instance, on grounds of general fairness and equity." (2 Cal.Jur.3d, *supra*, Administrative Law, § 692, p. 128, fns. omitted.)

Here, Dr. Dennis argues that "the administrative remedy offered by petitioners was unavailable and does not 'square with the requirements of due process' " and that she "suffered irreparable harm because of petitioners' failure to give her a timely hearing."

## IV

### *The "Due Process" Exception To Exhaustion*

■ We begin with Dr. Dennis's argument based on "due process." Throughout this proceeding, Dr. Dennis has repeatedly asserted that she has been denied "due process." To the extent Dr. Dennis means to suggest she has a right to due process of law under the state and federal Constitutions with

---

[14] "The provisions relating to the six-month or the 90-day periods for a decision may be waived by the employee but if not so waived, a failure to render a timely decision is an exhaustion of all available administrative remedies." (Gov. Code, § 18671.1.)

respect to the peer review process, she is mistaken. As explained in *Goodstein v. Cedars-Sinai Medical Center* (1998) 66 Cal.App.4th 1257 [78 Cal.Rptr.2d 577], " '[s]ince the actions of a private institution are not necessarily those of the state, the controlling concept in such cases is fair procedure and not due process. Fair procedure rights apply when the organization involved is one affected with a public interest, such as a private hospital.' " (*Id.* at p. 1265, quoting *Applebaum v. Board of Directors* (1980) 104 Cal.App.3d 648, 657 [163 Cal.Rptr. 831].)

Since Kaiser and TPMG are private institutions, whatever fair procedure rights Dr. Dennis has arise from section 809 et seq. and not from the due process clauses of the state and federal Constitutions.[15] Thus, to the extent Dr. Dennis relies on cases involving the constitutional right to "due process," her reliance is misplaced.

In *Unnamed Physician v. Board of Trustees, supra,* 93 Cal.App.4th at page 620, drawing upon a well-established body of case law involving administrative remedies provided by governmental agencies, the court stated that "[a] remedy is not adequate if it does not square with the requirements of due process." Dr. Dennis relies on this statement in suggesting that the failure of the Hospital and TPMG to begin her hearing in the time allowed by section 809.2(h) made the administrative remedy "inadequate." But because Dr. Dennis is entitled to "fair procedure" under the peer review statutes, and not to "due process" under the state and federal Constitutions, the cases underlying the rule stated in *Unnamed Physician* do not apply to her.

■ In *Applebaum v. Board of Directors, supra,* 104 Cal.App.3d at page 657, the court observed that "[t]he distinction between fair procedure and due process rights appears to be one of origin and not of the extent of protection afforded an individual; the essence of both rights is fairness." But this does not assist Dr. Dennis. Under the rule on which Dr. Dennis attempts to rely, "An administrative remedy is inadequate where the agency does not provide for a hearing and the taking of evidence or adequate protection of due process rights." (2 Cal.Jur.3d, *supra,* Administrative Law, § 700, p. 138.) For example, in *Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328 [124 Cal.Rptr. 513, 540 P.2d 609], our Supreme Court held that an administrative remedy which provided "merely for the submission of a grievance form, without the taking of testimony, the submission of legal briefs, or resolution by an impartial finder of fact [wa]s manifestly inadequate

---

[15] This is in contrast to physicians at state and county hospitals. Sections 809.1 through 809.4 do not apply to peer review proceedings conducted by such hospitals (§ 809.7); however, this limitation does "not affect the obligation to afford due process of law to licentiates involved in peer review proceedings in these hospitals" (*ibid.*). Thus, constitutional due process governs peer review proceedings in government-owned hospitals.

to handle disputes of [a] crucial and complex nature." (*Id.* at pp. 342–343.) Thus, an administrative remedy may be deemed inadequate if it fails to provide basic due process protections. The failure to begin a hearing by a certain date cannot be equated with the denial of basic due process protections such as the right to adequate notice of charges and a reasonable opportunity to respond to those charges.

In ruling that Dr. Dennis was not required to exhaust her administrative remedies, the superior court cited the following passage from *Westlake Community Hosp. v. Superior Court, supra,* 17 Cal.3d at page 478: "When a hospital denies staff privileges to a doctor without affording him the basic procedural protection to which he is legally entitled, the hospital and parties acting in concert with the hospital can offer no convincing reason or justification why they should be insulated from an immediate tort suit for damages." In effect, the superior court treated the failure to begin Dr. Dennis's hearing within the 60-day statutory period as the denial of a "basic procedural protection to which [Dr. Dennis was] legally entitled" within the meaning of *Westlake.* (*Ibid.*)

The flaw in this reasoning becomes apparent on a closer review of *Westlake.* In *Westlake,* one hospital (Los Robles) rejected the application of a physician (Dr. Kaiman) to join its staff, but it did not appear from the evidence Los Robles submitted in support of its summary judgment motion that an administrative remedy was actually available for Dr. Kaiman to challenge that decision, nor did it appear that Los Robles had ever informed Dr. Kaiman of the availability of such a remedy. (*Westlake Community Hosp. v. Superior Court, supra,* 17 Cal.3d at pp. 472–473, 477–478.) On these facts, the Supreme Court concluded: "Inasmuch as the present affidavits do not indicate that Los Robles ever informed Dr. Kaiman that she had any right to contest the denial of membership privileges within the hospital's own hierarchy, defendants cannot rely on plaintiff's alleged failure to exhaust such remedies to bar her action." (*Id.* at p. 478.)

Los Robles then argued "that even if the doctrine of exhaustion of remedies does not bar plaintiff's tort action with respect to the events at Los Robles, the trial court should still have granted their motion for summary judgment as to Los Robles because plaintiff's sole remedy is to challenge the Los Robles exclusion by a writ of mandate, rather than in a tort action for damages." (*Westlake Community Hosp. v. Superior Court, supra,* 17 Cal.3d at p. 478.) The Supreme Court disagreed, stating: "[W]hen a hospital excludes or dismisses a doctor from staff privileges pursuant to a quasi-judicial proceeding, the aggrieved doctor must initially succeed in a mandamus action before pursuing a tort remedy. Plaintiff's exclusion at Los Robles however, was not undertaken pursuant to a quasi-judicial proceeding; the hospital did

not inform plaintiff of the reason for her exclusion nor did it notify her of a right to respond to the charges against her." (*Ibid.*) It was in this context that the Supreme Court referred to a hospital's failure to afford a physician "the basic procedural protection to which he is legally entitled." (*Ibid.*)

■ We are not persuaded that the failure to commence a peer review hearing within the 60-day statutory period can be equated with failing to inform the physician of the reason for the adverse decision against her or failing to notify her of her right to respond to the charges against her. These latter failures deprive the physician of basic procedural protections that are fundamental to *any* fair administrative remedy, whether the remedy is governed by principles of "fair procedure" or "due process." (See *Applebaum v. Board of Directors, supra,* 104 Cal.App.3d at p. 657 [noting that "[a]dequate notice of charges and a reasonable opportunity to respond are basic to both" fair procedure and due process].) Although the failure to provide Dr. Dennis with a hearing certainly would have constituted a denial of a basic procedural protection justifying an immediate tort action under *Westlake*, it does not follow that the failure to commence the required hearing by the statutory deadline requires the same result. That is particularly true where, as here, the parties were still exchanging correspondence about the selection of a hearing officer and panel members when the statutory deadline passed.

■ In short, we conclude the failure to begin the hearing within the 60-day statutory period, without more, does not constitute a denial of "fair procedure" that would exempt Dr. Dennis from the requirement that she exhaust her administrative remedy.

V

*The Unavailability and Irreparable Harm Exceptions To Exhaustion*

We now turn to the other exceptions to the exhaustion requirement on which Dr. Dennis relies. On the issue of unavailability, Dr. Dennis contends that because the Hospital failed to start the hearing on time, no "viable" administrative remedy was made available to her. But Dr. Dennis fails to offer any persuasive basis for construing the 60-day statutory deadline as a bright line of viability—that is, Dr. Dennis does not explain why a hearing that begins on the 60th day is "viable" but a hearing that begins on the 61st day is not. Thus, we reject the contention that the failure to begin the peer review hearing on time, by itself, makes the peer review process "unavailable."

,On the issue of irreparable harm, Dr. Dennis contends she should be excused from completing the peer review process because she has suffered irreparable harm from the Hospital's failure to give her a timely hearing. We disagree.

■ "An exception to the requirement of exhaustion of administrative remedies may arise where one can show that irreparable injury will result if an administrative hearing is permitted to proceed and its orders are made effective without prior judicial interference." (2 Cal.Jur.3d, *supra*, Administrative Law, § 703, p. 143.) Stated another way, failure to exhaust may be excused "when pursuit of an administrative remedy would result in irreparable harm." (*Ogo Associates v. City of Torrance* (1974) 37 Cal.App.3d 830, 834 [112 Cal.Rptr. 761].)

Thus, to show irreparable harm justifying an exception from the exhaustion requirement, Dr. Dennis must show harm that will irreparably result if the administrative process, rather than the court action, is allowed to go forward. Dr. Dennis fails to explain how requiring her to proceed with a peer review hearing that was not commenced within the 60-day period provided by section 809.2(h), instead of allowing her to proceed with an immediate action in superior court, would cause her irreparable harm. The harm to which Dr. Dennis refers—the alleged "devastat[ion]" of her career caused by the summary suspension of her gynecological surgical privileges and the termination of her employment—has already occurred (if it has occurred at all). She fails to explain how .this harm will be irreparable if the administrative process is allowed to go forward, but will not be if she is allowed to go forward with her actions in superior court. Accordingly, the irreparable harm exception to the exhaustion requirement does not apply.

In summary, Dr. Dennis has failed to provide any persuasive authority to support her claim that the failure of the Hospital and TPMG to begin the peer review hearing on time excused her from completing the peer review process.[16] This does not mean the 60-day deadline was meaningless; it simply means that Dr. Dennis's recourse is elsewhere than in an immediate superior court action for damages and other relief, such as reinstatement. Specifically, Dr. Dennis could have sought a writ of mandate from the superior court to compel the Hospital to begin the hearing. (Cf. *Board of Education v. Sacramento County Bd. of Education* (2001) 85 Cal.App.4th

---

[16] As we have previously noted, there is some authority for the proposition that the exhaustion doctrine does not apply "where the agency indulges in unreasonable delay." (2 Cal.Jur.3d, *supra*, Administrative Law, § 692, p. 128.) However, Dr. Dennis has not claimed "unreasonable delay" here; instead, she has relied on the lapse of the 60-day deadline by itself to exempt her from the exhaustion requirement. Accordingly, we have no occasion to examine the issue of "unreasonable delay" in this case.

1321, 1332 [102 Cal.Rptr.2d 872] [where statutory deadline is only directory, any delay beyond the deadline is remediable by petition for writ of ordinary mandamus to compel the decision maker to perform its duty].) She chose not to do so.

## VI

### *Dr. Dennis's Other Arguments*

Having concluded that Dr. Dennis was not entitled to avoid the peer review process merely because the Hospital and TPMG failed to begin the hearing by the statutory deadline, we are faced with how to proceed given that Dr. Dennis offered alternate bases in support of her motion for summary adjudication in the Kaiser action, in opposition to Kaiser's cross-motion in the Kaiser action, and in opposition to TPMG's summary adjudication motion in the TPMG action. Most prominently, Dr. Dennis sought summary adjudication in the Kaiser action on the alternate ground that the Hospital's hearing process violates due process requirements of impartiality. Citing *City of Santee v. Superior Court* (1991) 228 Cal.App.3d 713 [279 Cal.Rptr. 22], Dr. Dennis contends "the correct remedy is for the matter to be remanded to the Superior Court for a formal ruling on Dr. Dennis' due process claim."[17] We disagree.

In *City of Santee*, the city granted a conditional permit to a landowner. (*City of Santee v. Superior Court, supra*, 228 Cal.App.3d at p. 716.) "Although advised . . . this decision would become final unless appealed to the planning commission within 10 days, [the landowner] neither appealed this decision to exhaust its administrative remedies, nor sought a writ of mandate challenging either condition." (*Id.* at pp. 716–717.) The landowner later "sued the City, alleging fraud, breach of mandatory duty and civil conspiracy by City officials in the first cause of action and seeking declaratory and injunctive relief" in the second cause of action. (*Id.* at pp. 717, 719.) On a motion for summary judgment, "the City asserted immunity with regard to the fraud action and res judicata as to the declaratory relief action contending the administrative writ of mandamus constituted [the landowner's] exclusive remedy." (*Id.* at p. 717.) The trial court denied the city's motion on the ground that a mandamus action was not the landowner's exclusive remedy. (*Ibid.*) The trial court declined to address the city's motion with respect to the cause of action for fraud " 'because the court does not grant partial summary judgments.' " (*Ibid.*)

---

[17] This is the only one of her alternate arguments in the superior court that Dr. Dennis has raised before this court as a basis for upholding the superior court's ruling. Accordingly, we deem the remainder of Dr. Dennis's alternate arguments abandoned.

On the city's petition for a writ of mandate, the Court of Appeal concluded the landowner's cause of action for declaratory and injunctive relief was barred by its failure to seek review of the city's decision through administrative mandamus. (*City of Santee v. Superior Court, supra,* 228 Cal.App.3d at p. 719.) The appellate court remanded the case to the superior court so that the superior court could rule on the merits of the city's contentions regarding the fraud cause of action. (*Id.* at pp. 719–720.) Such a ruling was necessary because if the city prevailed on its defense to the fraud cause of action also, then the city would be entitled to summary judgment in its favor on the entire action.

Unlike the appellate court in *City of Santee*, we are not faced with a motion for summary adjudication of a distinct cause of action upon which the superior court declined to rule and which, if successful, would result in a summary judgment. Instead, we are faced with an alternate argument offered to justify a ruling the superior court has already made. In essence, Dr. Dennis asks us to let the superior court determine in the first instance whether the alternate ground she advanced in support of her summary adjudication motion justifies that court's ruling that she does not have to exhaust her administrative remedies.

 We conclude the proper course of action is to address Dr. Dennis's alternate argument ourselves. In a writ proceeding such as this, "[w]e review de novo the trial court's decision to grant summary adjudication and are not bound by the trial court's stated reasons or rationales." (*Scripps Clinic v. Superior Court* (2003) 108 Cal.App.4th 917, 927 [134 Cal.Rptr.2d 101].) The question before us on this writ petition is whether the superior court has a clear and present duty to deny Dr. Dennis's motion for summary adjudication and instead grant Kaiser's and TPMG's motions for summary adjudication, and whether Kaiser and TPMG have a clear, present, and beneficial right to performance of that duty. (See *Fisherman's Wharf Bay Cruise Corp. v. Superior Court* (2003) 114 Cal.App.4th 309, 319 [7 Cal.Rptr.3d 628].) We cannot answer that question without evaluating the alternate argument on which Dr. Dennis relies to argue that the superior court's ruling was correct.

## VII

### The Exhaustion Requirement and the Issue of Bias

Dr. Dennis contends she was excused from completing the peer review process because "[t]he administrative hearing procedures proposed by petitioners here violates [*sic*] prevailing standards of due process and fair procedures." More specifically, Dr. Dennis contends petitioners' unilateral selection of a hearing officer and the JRC violates due process. She also

contends she presented "compelling undisputed evidence that both the hearing officer and the peer-review panel members proposed by petitioners had substantial financial interests in the outcome of the administrative proceeding in violation of *Haas v. County of San Bernardino, supra.*"

As we have explained, case law regarding the exhaustion of administrative remedies doctrine recognizes that where an administrative remedy denies certain basic procedural protections—such as the right to adequate notice of the charges and a reasonable opportunity to respond to the charges—a plaintiff may be excused from exhausting that remedy. Essentially, Dr. Dennis tries to bring herself within the scope of that rule by arguing that the peer review process offered by Kaiser and TPMG denies her the basic procedural protection of an impartial and unbiased decisionmaker.

Kaiser and TPMG contend Dr. Dennis's claims of bias are "premature" because "[t]he Hospital Bylaws and the TPMG Policy Manual set forth procedures for conducting *voir dire* of the panel and the hearing officer, and provide for the hearing officer to rule on any challenges to their impartiality." According to Kaiser and TPMG, Dr. Dennis "has yet to avail herself of those procedures, which she must exhaust before seeking relief in the courts."

There is no doubt that a physician facing a peer review proceeding is entitled to a "fair" proceeding. In enacting section 809 et seq., the Legislature made the following findings which make that point clear: "(3) Peer review, fairly conducted, is essential to preserving the highest standards of medical practice"; "(4) Peer review which is not conducted fairly results in harm both to patients and healing arts practitioners by limiting access to care"; "(5) Peer review, fairly conducted, will aid the appropriate state licensing boards in their responsibility to regulate and discipline errant healing arts practitioners." (§ 809, subd. (a)(3)–(5).)

The question here, however, is whether a physician can avoid the peer review process and proceed with an immediate action in the superior court for damages and other relief based on the claim that the administrative process does not afford her an unbiased decision maker, when the process itself includes a method for challenging the decision maker which the physician has not exhausted. We conclude the answer to that question is no.

■ We have already explained that a physician like Dr. Dennis is entitled to "fair procedure" as provided for in section 809 et seq. Those statutes endeavor to ensure a fair hearing process by providing two alternatives for the appointment of a decision maker. First, the peer review hearing may be conducted before "an arbitrator or arbitrators selected by a process mutually acceptable to the licentiate and the peer review body." (§ 809.2,

subd. (a).) Second, the hearing may be conducted before a peer review panel, with or without a hearing officer. (§ 809.2, subds. (a), (b).) The decision of which alternative will be followed in any particular case is committed to the peer review body. (§ 809.2, subd. (a).) Here, the Hospital's bylaws and TPMG's policy manual specify that only the second alternative will be used.

■ To ensure a fair hearing when the peer review body chooses to proceed with a panel and a hearing officer, the statutes provide that the panel members must be "unbiased individuals who shall gain no direct financial benefit from the outcome, [and] who have not acted as an accuser, investigator, factfinder, or initial decisionmaker in the same matter" and the hearing officer must be someone who "gain[s] no direct financial benefit from the outcome, [does] not act as a prosecuting officer or advocate, and [is] not . . . entitled to vote." (§ 809.2, subds. (a), (b).) The statutes further provide a method for the physician to test the impartiality of the panel members and the hearing officer and to challenge them as necessary. Specifically, subdivision (c) of section 809.2 provides: "The licentiate shall have the right to a reasonable opportunity to voir dire the panel members and any hearing officer, and the right to challenge the impartiality of any member or hearing officer. Challenges to the impartiality of any member or hearing officer shall be ruled on by the presiding officer, who shall be the hearing officer if one has been selected." The Hospital's bylaws and TPMG's policy manual were consistent with these requirements.

■ From the foregoing review of the governing statutes, it is evident that the Legislature intended to permit the unilateral selection of panel members and a hearing officer by the peer review body. Nothing in *Haas v. County of San Bernardino, supra*, 27 Cal.4th 1017, prohibits this practice. In *Haas*, a case involving an administrative hearing on the revocation of a license by a county board of supervisors, the Supreme Court held that "a temporary administrative hearing officer has a pecuniary interest requiring disqualification when the government unilaterally selects and pays the officer on an ad hoc basis and the officer's income from future adjudicative work depends entirely on the government's goodwill." (*Id.* at pp. 1021, 1024.)

■ Even assuming that *Haas*, which rested on constitutional due process principles because of the government action involved, applied here, to a case governed by statutory fair procedure principles, it does not support Dr. Dennis's attempt to avoid the peer review process altogether because the Hospital and TPMG unilaterally selected the hearing officer and JRC panel members. As the court explained in *Haas*, "no generally applicable principle of constitutional law permits the affected person . . . to select the adjudicator. . . . Neither payment nor selection [by the government agency], considered in isolation, is the problem." (*Haas v. County of San Bernardino, supra*,

27 Cal.4th at p. 1031.) Rather, the problem in *Haas* was that the county unilaterally selected a hearing officer who had an impermissible pecuniary interest in the outcome of the case because of "the risk that [the] hearing officer [would] be rewarded with future remunerative employment for [a] decision[] favorable to the county." (*Id.* at p. 1037.)

Here, even if we assume for the sake of argument that Dr. Dennis has shown, by undisputed evidence, that the hearing officer and/or JRC panel members appointed by the Hospital and TPMG have disqualifying pecuniary interests similar to the hearing officer in *Haas*, the question before us is whether that showing allows Dr. Dennis to avoid the peer review process altogether and proceed with an action for damages and other relief in the superior court without first exhausting the method provided in the peer review statutes for raising the issue of bias in the administrative proceeding. Stated another way, is Dr. Dennis entitled to have the court decide in the first instance whether the hearing officer and/or JRC panel members are so biased against her that she cannot receive a fair hearing in front of them? Dr. Dennis offers us no authority that supports an affirmative answer to that question.

In *Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802 [140 Cal.Rptr. 442, 567 P.2d 1162], a physician sought a writ of mandate to compel a private hospital to reappoint him to its medical staff. (*Id.* at p. 808.) On appeal from the superior court's denial of his writ petition, the physician contended he was not afforded the " 'minimal requisites of fair procedure required by established common law principles' " because, among other things, "three of the five members of the committee were prejudiced against him." (*Id.* at pp. 825–826.) The Supreme Court rejected this argument because the physician did not raise the issue of prejudice before the peer review committee or before the hospital's board of directors at the appellate review hearing. (*Id.* at p. 826.)

The Supreme Court's decision in *Anton* is consistent with the general requirement that a physician must exhaust administrative remedies before the courts will act. Here, Dr. Dennis has made no effort to exhaust her administrative remedy with respect to the claimed bias of the hearing officer and JRC panel members, nor has she shown that her failure to do so is excused by any of the limited exceptions to the exhaustion requirement. It would be impermissible bootstrapping for Dr. Dennis to claim she is excused from exhausting her administrative remedy on the bias issue because the hearing officer's and/or panel members' alleged bias would deny her the right to "fair procedure" to which she is entitled under the peer review statutes. Whether the hearing officer and/or panel members are biased is a question the peer review statutes commit to the hearing officer to decide in the first instance. Thus, this aspect of the peer review process is part of the "fair procedure" to which Dr. Dennis is entitled.

In summary, Dr. Dennis has failed to establish any basis for excusing her from the requirement that she must exhaust her administrative remedies in this matter, including that part of the administrative process that allows her to challenge the impartiality of the panel members and hearing officer.

## VIII

### *Unclean Hands*

As an affirmative defense to Kaiser and TPMG's writ petition, Dr. Dennis alleges they are not entitled to a writ of mandate that would have the effect of requiring her to exhaust her administrative remedies because they have "unclean hands." According to Dr. Dennis, their hands are unclean "because they have never offered her a timely administrative peer-review process that comports with her right to due process."

"It has . . . been held that the writ [of mandate] should not issue in aid of one who does not come into court with clean hands [citation], or 'Where . . . the conduct of the party applying for the writ has been such as to render it inequitable to grant him relief . . .' [citation]." (*San Diego County Dept. of Pub. Welfare v. Superior Court* (1972) 7 Cal.3d 1, 9 [101 Cal.Rptr. 541, 496 P.2d 453].) As we see it, however, Dr. Dennis's assertion of unclean hands is merely an attempt to bring in through the back door arguments we have turned away at the front door. We have concluded that the failure of the Hospital and TPMG to begin the peer review hearing by the 60-day deadline did not excuse Dr. Dennis from completing the peer review process. We have also concluded that Dr. Dennis must present her claims of bias to the hearing officer in the first instance. In seeking a writ that would force Dr. Dennis to do what the law requires and exhaust her administrative remedies, Kaiser and TPMG have not come to court with unclean hands.

## IX

### *The Exhaustion Requirement Applies to All of Dr. Dennis's Causes of Action in the Kaiser Action*

Dr. Dennis contends the exhaustion requirement does not apply to all of the causes of action in her complaint in the Kaiser action. Specifically, she contends her "third and eleventh Counts for unfair competition, and her twelfth though sixteenth Counts for fraud and negligent misrepresentation, are plainly not covered by the exhaustion issue, since plaintiff could prevail on those counts even if the summary suspension was justified." Kaiser

disagrees, arguing that "[e]ach of those counts relies on the allegedly wrongful nature of the summary restriction of [Dr. Dennis's] privileges."

We first address Dr. Dennis's claims of unfair competition. In her third cause of action, Dr. Dennis alleges that KFH has a "policy and practice of using the peer review process in bad faith to discipline physicians without good cause," and this constitutes "unfair competition" under section 17200 et seq. In her eleventh cause of action, Dr. Dennis alleges that KFH and KFHP have a "policy and practice . . . to retaliate against those who complain about [their] management," and this too constitutes "unfair competition" under section 17200 et seq.

■ Dr. Dennis contends there is "no rationale or authority for requiring [her] to exhaust remedies before proceeding on the Unfair Competition Counts" because the peer review panel has no "special expertise" applicable to those counts. However, the expertise of the peer review panel is only one of the justifications behind the exhaustion of administrative remedies requirement. In *Westlake*, the Supreme Court identified several "policy considerations which support the imposition of a general exhaustion requirement." (*Westlake Community Hosp. v. Superior Court, supra*, 17 Cal.3d at p. 476.) In addition to recognizing the " 'expertise' of the organization's quasi-judicial tribunal," the "exhaustion of remedies requirement serves the salutary function of eliminating or mitigating damages" and "promote[s] judicial efficiency by unearthing the relevant evidence [in the administrative proceeding] and by providing a record which the court may review." (*Ibid.*)

■ *Westlake* also includes a further discussion bearing on the issue before us. In addition to holding that the exhaustion requirement applies to hospital peer review proceedings, the court in *Westlake* held that "an individual who has been expelled or excluded from membership in an association after being afforded a quasi-judicial proceeding . . . must first succeed in setting aside the association's decision in a separate mandamus action" before the individual can bring a tort action for damages. (*Westlake Community Hosp. v. Superior Court, supra*, 17 Cal.3d at pp. 482–483.) In explaining its decision, the court wrote: "As in a malicious prosecution action, plaintiff's position rests on a contention that defendants intentionally and maliciously misused a quasi-judicial procedure in order to injure her; such a claim is necessarily premised on an assertion that the hospital's decision to revoke plaintiff's privileges was itself erroneous and unjustified. Although a quasi-judicial decision reached by a tribunal of a private association may not be entitled to exactly the same measure of respect as a similar decision of a duly constituted public agency [citation], we believe that so long as such a quasi-judicial decision is not set aside through appropriate review procedures the decision has the effect of establishing the propriety of the hospital's

action. [Citation.] Accordingly, we conclude that plaintiff must first succeed in overturning the quasi-judicial action before pursuing her tort claim against defendants. [¶] In our view, the above requirement accords a proper respect to an association's quasi-judicial procedure, precluding an aggrieved party from circumventing the established avenue of mandamus review. In addition, this result will simplify court procedures by providing a uniform practice of judicial, rather than jury, review of quasi-judicial administrative decisions. [Citations.] [¶] Finally, this procedure affords a justified measure of protection to the individuals who take on, often without remuneration, the difficult, time-consuming and socially important task of policing medical personnel. Because such individuals remain ultimately subject to suit, the procedure outlined above does not conflict with the legislative decision to afford only a conditional privilege to these decisionmakers [citation]; once a court determines in a mandamus proceeding that an association's quasi-judicial decision cannot stand, either because of a substantive or procedural defect, the prevailing party is entitled to initiate a tort action against the hospital and its board or committee members or staff." (*Id.* at p. 484.)

Here, in her third cause of action in the Kaiser action, Dr. Dennis essentially seeks to have a jury decide whether KFH "use[d] [its] peer review process in bad faith to discipline [her] without good cause," and in her eleventh cause of action seeks to have a jury decide whether KFH and KFHP "retaliat[ed] against [her for] complain[ing] of discrimination [and] harassment." Although Dr. Dennis also seeks to show that the actions of KFH and KFHP against her are consistent with a "policy and practice" more broadly applied, it remains true that the actions *toward her* in summarily suspending her gynecological surgery privileges are central to her unfair competition claims. At this point, however, Dr. Dennis has not exhausted the administrative process by which she is entitled to challenge whether the Hospital had a legitimate basis for suspending her privileges. Unless and until she succeeds in having the decision to suspend her privileges overturned, either through the peer review process or through an administrative mandamus proceeding following the peer review process, Dr. Dennis cannot be allowed to proceed with unfair competition claims that rest "on a contention that [KFH and KFHP] intentionally and maliciously misused a quasi-judicial procedure in order to injure her." (*Westlake Community Hosp. v. Superior Court, supra,* 17 Cal.3d at p. 484.)

We turn now to Dr. Dennis's claims of fraud and negligent misrepresentation. Dr. Dennis contends she is not required to exhaust the peer review process before pursuing these claims because "[p]etitioners' administrative body of physicians has no special expertise in fraud" and her "actions for fraud and negligent misrepresentation are not factually dependent on the summary suspension being wrongful." We disagree.

In her twelfth through sixteenth causes of action, Dr. Dennis alleges that KFH and Dr. Rozance made various negligent or fraudulent misrepresentations to her before and after she was hired. Specifically, she contends KFH falsely told her before she was hired that she was being hired on the " 'career track' " and that she would have a permanent position as a Kaiser physician. She also contends KFH failed to inform her that "her lack of experience in laparoscopy and pelviscopy could or would impair her ability to obtain full clinical privileges . . . and . . . her ability to continue to practice medicine at [the Hospital] and . . . lead to . . . the restriction or loss of her privileges to do gynecological surgery at [the Hospital] and . . . to the loss of her employment with TPMG." She further contends Dr. Rozance falsely told her in February 2003 "that she would be given a fair opportunity to seek senior physician status and that there was a mutual desire to take constructive steps to address any perceived deficiencies." In each of the five causes of action, Dr. Dennis alleges that as a result of the negligent or fraudulent misrepresentations and omissions she "has suffered lost earnings, damage to her reputation, a loss of earning capacity in the future, and emotional distress, humiliation and anxiety."

We conclude Dr. Dennis's pursuit of these causes of action is barred at this time for the same reason the pursuit of her unfair competition claims is barred. So long as the peer review process remains unexhausted, the Hospital's decision to summarily suspend her gynecological surgery privileges retains the imprimatur of propriety. In other words, in the eyes of the law, the Hospital had a valid reason for its action until Dr. Dennis proves otherwise through the peer review process or any administrative mandamus review that may follow. Dr. Dennis fails to explain how if she does not to establish that the suspension of her surgical privileges was wrongful through the avenues available to her, she can nonetheless prove that the negative consequences that allegedly flowed from the suspension of her privileges (i.e., lost earnings, damage to her reputation, etc.) resulted from wrongful conduct by Kaiser rather than from a proper and valid decision by the Hospital.

In summary, we conclude the superior court should have denied Dr. Dennis's motion for summary adjudication on her cause of action for declaratory relief in the Kaiser action and instead should have granted Kaiser's cross-motion for summary adjudication, as well as TPMG's motion for summary adjudication on the cause of action for declaratory relief in the TPMG action.

## DISPOSITION

The petition is granted. Let a peremptory writ issue directing the respondent court to: (1) vacate its order in case No. 03AS03739 granting Dr. Dennis's motion for summary adjudication and denying Kaiser's motion for summary adjudication on the count for declaratory relief; (2) vacate its order in case No. 03AS06960 denying TPMG's motion for summary adjudication on the count for declaratory relief; (3) enter a new order in case No. 03AS03739 denying Dr. Dennis's motion for summary adjudication and granting Kaiser's motion for summary adjudication on the count for declaratory relief; and (4) enter a new order in case No. 03AS06960 granting TPMG's motion for summary adjudication on the count for declaratory relief.

Petitioners shall be entitled to recover their costs in this proceeding. (Cal. Rules of Court, rule 56(l).)

Scotland, P. J., and Morrison, J., concurred.

A petition for a rehearing was denied April 21, 2005, and the petition of real party in interest for review by the Supreme Court was denied July 13, 2005. George, C. J., did not participate therein. Werdegar, A. C. J., was of the opinion that the petition should be granted.