Filed 3/26/18; Certified for Publication 4/16/18 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ROBERT O. POWELL, | D072616 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CIVDS1410052) |
| BEAR VALLEY COMMUNITY HOSPITAL et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Joseph R. Brisco, Judge. Affirmed.

Law Office of John D. Harwell and John D. Harwell for Plaintiff and Appellant.

Cole Pedroza, Kenneth R. Pedroza, Maureen M. Home; DiCaro, Coppo & Popcke, Carlo Coppo and Michael R. Popcke for Defendants and Respondents.

The Board of Directors (the Board) of Bear Valley Community Hospital (Bear Valley) denied Dr. Robert O. Powell's advancement from provisional to active staff membership and reappointment to Bear Valley's medical staff. Dr. Powell appeals from

the superior court judgment denying his petition for writ of mandate to void the Board's decision and for reinstatement of his medical staff privileges. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Brownwood, Texas*

Dr. Powell practiced medicine in both Texas and California as a general surgeon. In 2000, the medical executive committee of Brownwood Regional Medical Center (Brownwood), in Texas, found that Dr. Powell failed to advise a young boy's parents that he severed the boy's vas deferens during a hernia procedure or of the ensuing implications.[1] Further, the committee found that Dr. Powell falsely represented to Brownwood's medical staff, on at least two occasions, that he fully disclosed the circumstances to the parents—behavior which the committee considered to be dishonest, obstructive, and which prevented appropriate follow-up care. Based on the committee's findings, Brownwood terminated Dr. Powell's staff membership and clinical privileges.

The Texas State Board of Medical Examiners (Texas Board) completed an investigation of Dr. Powell's revocation of staff privileges at Brownwood. In a letter dated September 12, 2001 (2001 letter), the Texas Board advised Dr. Powell that its investigation, file No. "00-1243," was being "CLOSED with no action recommended because the evidence does not indicate a violation of the Texas Medical Practice Act." The Texas Board authorized him to use the 2001 letter, signed by the chief of investigations, to inform other entities of the case "closure."

---

[1] The fair hearing committee's report and findings were adopted by Brownwood's medical executive committee.

2

Brownwood reported its revocation of Dr. Powell's clinical privileges to the National Practitioner Data Bank (Data Bank), citing "issues of unprofessional conduct." In 2003, Dr. Powell submitted a responsive statement to the Data Bank, in which he asserted that Brownwood revoked his privileges "without factual or legal justification and in direct violation of state law." He further stated that "the [Texas Board] investigated the allegations against me, concluded in my favor, and dismissed the allegations as unsupportable. The dismissal was confirmed by letter dated September 12, 2001 from . . . [the] chief of investigations . . . ." Finally, Dr. Powell's responsive statement indicated that he had filed a lawsuit against Brownwood for terminating his privileges.

Dr. Powell's lawsuit against Brownwood, which included claims for breach of contract and tortious interference with prospective business relationships, was dismissed when the trial court granted Brownwood's motion for summary judgment. The judgment was affirmed on appeal (Texas court opinion). (*Powell v. Brownwood Reg'l Hosp., Inc.* (Tex.App., Sept. 9, 2004, No. 11-03-00171-CV) 2004 Tex.App. LEXIS 8202, p. *1.) The Texas court opinion recounted certain events leading to Brownwood's termination of Dr. Powell's privileges, including his failure to advise the hernia patient's parents of surgical complications.

*Post-Brownwood*

In subsequent years, Dr. Powell obtained staff privileges at other medical facilities. In 2009, however, he applied for privileges at Eisenhower Medical Center in Rancho Mirage, California, which inquired into the reasons for his termination of

3

privileges at Brownwood.  Dr. Powell withdrew his application for privileges before

Eisenhower Medical Center could make a final decision whether to grant them.

*Bear Valley, California*

In October 2011, Dr. Powell applied for appointment to the medical staff at Bear

Valley.  On his initial application form, Dr. Powell was required to attest whether his

clinical privileges had ever been revoked by any medical facility and if so, to separately

provide "full details" under penalty of lost privileges or a denied application.  Dr. Powell

responded "yes" and separately disclosed as follows:

> "Brownwood . . . terminated my privileges without factual or legal
> justification.  This action was reported to the Texas . . . Board . . .
> and . . . Data Bank.  The Texas . . . Board investigated allegations
> against me and determined in my favor.  This dismissal was
> confirmed by letter dated September 12, 2001.
>
> "[The Texas Board] determined that the evidence presented by the
> hospital did not indicate [a] violation of the Medical Practice Act.
> Consequently, all allegations were dismissed with no disciplinary
> action taken."

Dr. Powell also conversed with several members of Bear Valley's medical executive

committee (MEC) regarding his termination of privileges at Brownwood:  Drs. Dennis

Carden, Steven Knapik, and Michael Norman.  Dr. Carden, the chief of staff and liaison

between the MEC and the Board, learned from Dr. Powell that Brownwood terminated

his privileges because its management disagreed with Dr. Powell's use of advanced

and/or costly surgical procedures.  Dr. Powell told Dr. Knapik that his termination of

privileges arose from him "not getting along with" a pediatric patient's parents and that

the patient suffered "no bad clinical outcome."  Dr. Norman, the credentialing chair, was

4

aware that Brownwood had terminated Dr. Powell's privileges but considered the event largely irrelevant because it occurred many years ago and there had been no recent incidents. Dr. Powell did not include in his application materials an actual copy of the 2001 letter. Based on the MEC's recommendation, the Board approved Dr. Powell's appointment as a member of the provisional medical staff for one year.

In due course, 12 of Dr. Powell's surgical patients' charts (charts) were peer reviewed by an external surgeon, Dr. F. Allen Rutledge, II, who assigned scores ranging from 1 (best) to 5 (worst) on each of the charts. Bear Valley considered a score of 3 or above to be a minor, moderate, or major deviation from the standard of care, requiring remedial action. Of the 12 reviewed charts, eight of them scored a "3" or above, including two charts with a score of "4" or higher. For each of the eight problematic charts, Dr. Rutledge provided his written opinions regarding deficiencies in medical care and/or practices, ranging from failing to obtain patients' informed consents to a preventable injury to a patient's organ.

In spring of 2012, the MEC recommended to the Board that Dr. Powell advance to active privileges based on having seen only two of his peer reviewed charts. When the Board was informed of the full results of Dr. Powell's peer review, it expressed concerns to the MEC. The MEC retracted its recommendation of active privileges so that it could

5

review and discuss all of Dr. Powell's peer reviewed charts and he could complete a 90-day proctoring requirement.[2]

In summer of 2012, the MEC again recommended to the Board that Dr. Powell advance from provisional to active staff privileges. In the same time frame, Dr. Powell submitted a "reapplication" for staff privileges. In his reapplication materials, he indicated that Brownwood had previously terminated his privileges and there was a "report on file" regarding the matter.

Due to its lingering concerns regarding Dr. Powell's competency, the Board requested additional information before voting on the MEC's recommendation, including Dr. Powell's credentialing file and documents related to his proctored surgeries. The Board also sought to engage in a dispute resolution process in which two members of the Board would meet with two members of the MEC (two-plus-two). The MEC would not meet with the Board or provide the requested documents. In October 2012, the Board sent a list of questions to the MEC, including questions relating to whether Dr. Powell's privileges had ever been revoked at a hospital. Dr. Carden agreed that the MEC would respond to the questions at the next Board meeting. Dr. Powell's provisional staff privileges were set to expire on November 15, 2012.

At the next Board meeting on November 13, Dr. Carden, on behalf of the MEC, informed the Board of what Dr. Powell had said regarding why his privileges at

---

[2]     Pursuant to Bear Valley's medical staff bylaws in effect at the time (bylaws), the MEC recommended to the Board whether a physician should advance from provisional to active staff privileges. Under the bylaws, the Board possessed the final authority to approve the physician's medical staff privileges.

Brownwood were terminated, namely, an unfavorable political and/or economic environment and disagreement over Dr. Powell's use of advanced surgical procedures. Based on Dr. Powell's oral and written statements, Dr. Carden understood that Brownwood's allegations of unprofessional conduct were dismissed by the Texas Board, all of which was evidenced by the 2001 letter. The Board wished to see a copy of the "exonerat[ion]" letter, to which Dr. Carden said he should be able to obtain it. The Board set a follow-up meeting in two days. As it turned out, Dr. Powell did not have (or would not produce) the 2001 letter. On November 14, the Board and the MEC notified him that a Board meeting was set for the following day, at which time the Board would be considering whether to extend his provisional privileges to allow him more time "to obtain the verification letter from the Texas . . . Board . . . ."

On November 15, with the specter that the Board would not have "the [2001] letter" to review at its meeting, Bear Valley's general counsel conducted some legal research and located a copy of the Texas court opinion, which she provided to Dr. Carden and the Board members. At the Board meeting, the members discussed their concerns that Dr. Powell had not produced a copy of the 2001 letter and that the narrative of events in the Texas court opinion contradicted Dr. Powell's explanations regarding why his privileges at Brownwood were terminated. On behalf of the MEC, Dr. Carden withdrew the MEC's recommendation regarding Dr. Powell's privileges, deeming Dr. Powell's application "incomplete" due to the missing 2001 letter. The Board did not vote on Dr. Powell's privileges that night, and his provisional privileges expired. The MEC notified

7

Dr. Powell that his provisional privileges expired due to an incomplete application, but encouraged him to reapply.

Subsequently, Dr. Powell provided the Board with a letter from the Texas Board dated December 16, 2002 (2002 letter), claiming it was the relevant letter pertaining to his termination of privileges at Brownwood. The 2002 letter, which was signed by a staff attorney and not the chief of investigations, indicated that an investigation for a matter identified only as "log #02-0448" had been closed by the Texas Board.

In December 2012, the MEC again recommended to the Board that Dr. Powell be granted active staff privileges, retroactive to November 15, 2012. The Board invited Dr. Powell to attend a meeting and present additional documentation, but he declined to meet and did not provide any other materials. He did not produce a copy of the 2001 letter. In April 2013, the Board reached a tentative final decision to deny his request for active staff privileges, triggering Dr. Powell's right to a hearing, which he requested.

*Administrative Proceedings*

The Board provided Dr. Powell with a statement of charges forming the basis for its tentative final decision, including his (1) patient care issues identified during external peer review, by chart number (charge 1);[3] (2) incomplete application for privileges and/or failure to provide the 2001 letter (charge 2); and (3) misrepresentation of facts surrounding his termination of privileges at Brownwood (charge 3).

---

[3] Not long after providing the statement of charges, the Board provided Dr. Powell with an amendment to the statement of charges, notifying him of one more chart and bringing the total number of deviant charts to eight.

The administrative hearing continued over multiple dates in the latter half of 2013. Dr. Powell conducted voir dire of the hearing officer, Thomas Bradford, and the prospective panel members of the judicial review committee (JRC), consisting of various doctors. Dr. Powell inquired into the hearing officer's and panel members' backgrounds, any potential conflicts or biases, and asserted challenges for cause. The duly constituted JRC heard opening arguments, testimony from numerous witnesses offered by the Board and Dr. Powell, and closing arguments.[4] During the proceedings, the hearing officer provided instructions on procedural and legal matters, ruled on the parties' objections to evidence, and endeavored to keep the parties focused on the charges at hand. In February 2014, the JRC issued its written report, unanimously finding that the Board substantiated its charges against Dr. Powell by a preponderance of the evidence and that the Board's tentative final decision to deny his request for active privileges was both reasonable and warranted.

The JRC would not have upheld the Board's decision based solely on charge 1 relating to external peer review issues. However, as to charge 2, the JRC found that Dr. Powell willfully failed to produce the 2001 letter "to prevent an inquiry into the reasons for" his termination of privileges at Brownwood and attempted to deceive the Board by producing a different letter altogether, rejecting Dr. Powell's claim that he did not know or was confused about which letter the Board wanted to see. Additionally, as to charge 3, the JRC found that Dr. Powell misrepresented the reasons why his Brownwood privileges

---

4       Raymond Hino, the chief executive officer of Bear Valley, presented the Board's case. Hino was not an attorney.

9

were terminated and did not inform anyone at Bear Valley about his failure to make disclosures to the hernia patient's parents or that he repeatedly lied to Brownwood's medical staff about doing so. The JRC explained in detail its reasons for finding that Dr. Powell displayed fundamental character defects—dishonesty and deceitfulness—which justified the Board's tentative final decision.[5]

Under Bear Valley's bylaws, Dr. Powell had the right to an administrative appeal of the JRC's decision. He wished, however, to bypass an administrative appeal and directly petition the superior court for a writ of mandamus. With Dr. Powell's agreement, the Board affirmed the JRC's decision as its final decision and deemed Dr. Powell's exhaustion of administrative remedies, thus permitting him to directly petition for a writ of mandate.

In superior court, Dr. Powell filed a petition for writ of mandate under Code of Civil Procedure sections 1094.5 and 1094.6, seeking to void the JRC's/Board's decision and to have his medical privileges reinstated. The trial court denied the petition, and this appeal followed.

---

[5] The JRC also found that Dr. Powell intended to deceive the JRC: "[T]he evidence offered by Dr. Powell on [charge 3] throughout the hearing was intended to mislead and deceive this body in the same fashion that he misled and deceived the administrators, medical staff, and board members of [Bear Valley]."

10

DISCUSSION

I

*Guiding Principles*

Our review of the JRC's/Board's decision, like that of the superior court, is governed by Code of Civil Procedure section 1094.5. Under subdivision (b) of this statute, we determine "whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (*Ibid.*) Abuse of discretion established by the respondent's failure to proceed in the manner required by law is prejudicial and warrants relief only where "the deviation is material." (*El–Attar v. Hollywood Presbyterian Medical Center* (2013) 56 Cal.4th 976, 991 (*El–Attar*).)

"Decisions concerning medical staff membership and privileges are made through a process of hospital peer review. Every licensed hospital is required to have an organized medical staff responsible for the adequacy and quality of the medical care rendered to patients in the hospital. [Citations.] The medical staff must adopt written bylaws 'which provide formal procedures for the evaluation of staff applications and credentials, appointments, reappointments, assignment of clinical privileges, appeals mechanisms and such other subjects or conditions which the medical staff and governing body deem appropriate.' [Citations.] The medical staff acts chiefly through peer review committees, which, among other things, . . . recommend whether staff privileges should

11

be granted or renewed." (*Mileikowsky v. West Hills Hospital & Medical Center* (2009) 45 Cal.4th 1259, 1267 (*Mileikowsky*).)  The peer review process is codified at Business and Professions Code section 809 et seq.[6] and is a part of the "comprehensive statutory scheme for the licensure of California physicians" required to be included in the medical staff bylaws of acute care facilities.  (*Mileikowsky,* at p. 1267.)

"The primary purpose of the peer review process is to protect the health and welfare of the people of California by excluding through the peer review mechanism 'those healing arts practitioners who provide substandard care or who engage in professional misconduct.' " (*Mileikowsky, supra,* 45 Cal.4th at p. 1267.)  "Another purpose, also if not equally important, is to protect competent practitioners from being barred from practice for arbitrary or discriminatory reasons.  Thus, section 809 recites: 'Peer review, fairly conducted, is essential to preserving the highest standards of medical practice' ([§ 809], subd. (a)(3)), but '[p]eer review that is not conducted fairly results in harm both to patients and healing arts practitioners by limiting access to care' ([§ 809], subd. (a)(4)).  Peer review that is not conducted fairly and results in the unwarranted loss of a qualified physician's right or privilege to use a hospital's facilities deprives the physician of a property interest directly connected to the physician's livelihood." (*Ibid.*)  However, "[n]ot every violation of a hospital's internal procedures provides grounds for judicial intervention." (*El–Attar, supra,* 56 Cal.4th at p. 990.)

---

6    Further unspecified statutory references are to the Business and Professions Code.

Section 805 requires hospitals to report the denial or revocation of privileges for medical disciplinary reasons to the Medical Board of California, which maintains a historical record that includes this information. Further, hospitals are "usually . . . required to report disciplinary actions to the . . . Data Bank, established for the purpose of tracking the activities of incompetent physicians." (*Mileikowsky, supra,* 45 Cal.4th at p. 1268.) As a result, the denial of staff privileges can be detrimental to a physician's career. Balanced against the physician's interest are the public's interest in receiving quality medical care and a hospital's duty to its patients to provide competent staff physicians. (*Rhee v. El Camino Hospital District* (1988) 201 Cal.App.3d 477, 489; §§ 809, 809.05; Cal. Code Regs., tit. 22, §§ 70701, subd. (a)(7), 70703, subds. (a) & (b).) "In the exercise of this duty, the hospital must be free to establish and enforce selection and review procedures, so long as they do not result in arbitrary or discriminatory practices." (*Rhee,* at p. 501.)

With respect to private hospitals, like Bear Valley, the physician's fair procedure rights "arise from section 809 et seq. and not from the due process clauses of the state and federal Constitutions." (*Kaiser Foundation Hospitals v. Superior Court* (2005) 128 Cal.App.4th 85, 102.) These statutes "establish[ ] minimum protections for physicians subject to adverse action in the peer review system." (*Mileikowsky, supra,* 45 Cal.4th at p. 1268.) The statutory scheme requires hospitals to provide an affected physician both notice and the opportunity for a hearing when a peer review committee has recommended a "final proposed action" that must be reported to the Medical Board. (§§ 809.1, subds. (a), (b), 809.3, subd. (b)(1), (2) & (3).)

13

The hearing must be held "before a trier of fact" that, as determined by the peer review body, is either "an arbitrator or arbitrators selected by a process mutually acceptable to the licentiate and the peer review body" or "a panel of unbiased individuals . . . which shall include, where feasible, an individual practicing the same specialty as the licentiate." (§ 809.2, subd. (a).) During the hearing, both parties have the right "[t]o call, examine, and cross-examine witnesses" and "[t]o present and rebut evidence determined by the arbitrator or presiding officer to be relevant." (§ 809.3, subd. (a)(3), (4).) "Upon the completion of a hearing . . . the licentiate and the peer review body involved have the right to . . . : [¶] [a] written decision of the trier of fact, including findings of fact and a conclusion articulating the connection between the evidence produced at the hearing and the decision reached." (§ 809.4, subd. (a)(1).) Although section 809.1 et seq. speaks of a "peer review body," the procedural rights apply regardless of whether an adverse action is initiated by a peer review body or by a hospital's governing board. (*Sahlolbei v. Providence Healthcare, Inc.* (2003) 112 Cal.App.4th 1137, 1148 (*Sahlolbei*).)

II

*Right to a Hearing*

Dr. Powell claims he was entitled to a hearing before the lapse of his provisional staff privileges in November 2012. Under the circumstances, we disagree.

A physician with staff privileges does not have an absolute right to reappointment. (*Mileikowsky, supra,* 45 Cal.4th 1259, 1274, fn. 7 [clarifying the holding of *Anton v. San Antonio Community Hospital* (1977) 19 Cal.3d 802].) For example, when a reappointment to medical staff does not occur due to a "delay caused by the physician's

14

failure to cooperate," the hospital is not required to renew or extend the existing appointment. (*Mileikowsky,* at p. 1274, fn. 7.) Moreover, the right to a hearing for a denial of staff privileges is limited to when the denial of privileges is for a "medical disciplinary cause or reason." (§ 809.1; see *Sahlolbei, supra,* 112 Cal.App.4th at p. 1151.) A medical disciplinary cause or reason means "that aspect of a licentiate's competence or professional conduct which is reasonably likely to be detrimental to patient safety or to the delivery of patient care." (§ 805, subd. (a)(6).) Bear Valley's bylaws rely on these statutory provisions to determine whether a physician is entitled to a hearing; a lapse in clinical privileges based on submitting an incomplete application is neither reportable under section 805 nor does it trigger the right to a hearing.

Applying the foregoing principles, we conclude that Bear Valley was not required to afford Dr. Powell a hearing prior to the expiration of his provisional privileges or to extend his provisional privileges until a hearing could be held. Dr. Powell's privileges lapsed in November 2012 due to his failure to comply with the application process and submit a document that was reasonably necessary for the MEC and Board to evaluate his request. Under penalty of lost privileges or a denied application, Dr. Powell attested that the 2001 letter from the Texas Board supported his statements regarding his termination of privileges at Brownwood, but at no time did he produce the 2001 letter or have it available for review upon request. We are not persuaded Dr. Powell was entitled to a hearing prior to his expiration of privileges (or an extension of his provisional privileges) because neither the MEC nor the Board had taken any action against Dr. Powell up until then that would constitute a reportable adverse event under section 805, subdivision (b).

15

(See §§ 805, subd. (b), 809.1; cf. *Sahlolei, supra*, 112 Cal.App.4th at pp. 1151-1152 [hospital board's actions would result in a § 805 reportable event and thus plaintiff had right to hearing before he lost privileges].)

Dr. Powell argues the Board surreptitiously terminated his staff privileges, presumably for a medical disciplinary cause, by allowing his privileges to lapse and failing to act. His argument is not supported by the record. Under Bear Valley's bylaws, the MEC recommended whether a physician should move from provisional to active staff status and whether a physician should continue receiving provisional privileges. Likewise, the MEC recommended a physician's reappointment to the medical staff for the Board's consideration. In Dr. Powell's case, the Board convened in November 2012 prior to his expiration of provisional privileges with the express intention of voting on whether to grant his request for active staff privileges, but the MEC withdrew its recommendation based on its determination that his application was incomplete. Bear Valley's bylaws squarely placed the burden of submitting a complete application and any reasonably necessary supporting materials on the applicant, and the Board could not vote on any request for privileges or reappointment application without a favorable recommendation from the MEC. Prior to the lapse of Dr. Powell's privileges, neither the MEC nor the Board had reached a decision to terminate his privileges for a medical disciplinary cause.

For these reasons, Dr. Powell was not entitled to a hearing prior to the expiration of his provisional privileges. When the Board reached a tentative final decision in April 2013 to deny Dr. Powell's reappointment to active staff for a medical disciplinary cause,

16

which would result in a reportable adverse event under section 805, it afforded him the right to a hearing.[7]

## III

*The Board's Decision to Deny Dr. Powell's Request for Active Staff Privileges*

Dr. Powell claims the Board exceeded its authority in this case by failing to give great weight to the MEC's recommendation to grant him active staff privileges. It is undisputed Bear Valley's bylaws conferred on the Board the final authority to approve or disapprove a physician's medical staff privileges provided the Board gave "great weight to the recommendations of the [MEC]" and did "not act in a manner that is arbitrary or capricious." The bylaws authorized the Board to refer an application back to the MEC for further consideration, request documents that were reasonably necessary to evaluate the application, invoke an informal dispute resolution process, and finally, to reach a different conclusion than the MEC.

Our review of the Board's decision is deferential, in view of the language in section 809.05 stating that hospital governing boards have a legitimate function in the peer-review process, provided the Board "acted within its delegated authority" and "properly exercised independent judgment upon the relevant evidence," according due weight to the MEC's recommendation insofar as it "reflect[s] [the MEC's] domain of expertise." (*Weinberg v. Cedars-Sinai Medical Center* (2004) 119 Cal.App.4th 1098,

---

7    The MEC met after the lapse of Dr. Powell's privileges and renewed its favorable recommendation for him to receive active staff privileges retroactive to November 15, 2012. The Board voted against the MEC's recommendation.

1109.)  We presume the Board acted properly absent an affirmative showing to the contrary.  (*Id.* at p. 1111.)  Based on our review of the record, the Board did not exceed its authority.

The Board initially became concerned about Dr. Powell's advancement to active staff when it learned that the MEC made a recommendation without considering most of his peer-reviewed charts.  Later, the Board's lingering concerns regarding Dr. Powell's competency led it to ask appropriate questions regarding his professional background.  The MEC informed the Board that Dr. Powell's privileges were revoked at Brownwood for reasons unrelated to medical care.  Largely satisfied with the MEC's explanations, the Board was prepared to approve Dr. Powell's privileges if it could only see a copy of the 2001 letter.  His refusal to produce the 2001 letter uncovered the fact that he had not been forthright about his termination of privileges from the outset.  He had lied to various colleagues.  He produced the 2002 letter under the pretense that it was the relevant letter.  It was not.  As the JRC found, regardless of whether he was at fault for the boy's surgical complication at Brownwood, Dr. Powell lied to Brownwood's medical staff and lied to Bear Valley's medical staff about the circumstances, showing a propensity for dishonest and unethical conduct that could negatively impact his and other physicians' provision of medical care.  Under the circumstances, the Board acted within its authority to protect patients.  (See, e.g., *Webman v. Little Co. of Mary Hospital* (1995) 39 Cal.App.4th 592, 602-603 [hospital's denial of reappointment when appellant prevented inquiries into a prior cessation of privileges was "entirely reasonable"].)

18

In addition, the record shows the Board greatly deferred to the MEC on matters of which the MEC had expertise and was fully informed, such as Dr. Powell's proctored cases. However, the JRC found that members of the MEC had little or no insight into the true circumstances of Dr. Powell's termination of privileges at Brownwood or the extent of his misrepresentations, having been successfully deceived. In our view, the Board properly exercised independent judgment based on the information presented, all the while according due weight to the MEC's recommendation.

Dr. Powell argues the Board must have had an ulterior motive in terminating his privileges, such as economic self-interest. We reject this argument, as there is no substantial evidence in the record that the Board had an ulterior motive.[8] Dr. Powell highlights certain evidence to support his argument that the Board usurped the MEC's role, while ignoring the substantial quantity of evidence establishing the Board's understanding of its duties and sole concern of ensuring the provision of quality medical care at Bear Valley. We do not assess the credibility of witnesses or resolve conflicts in testimony on appeal. Dr. Powell has failed to demonstrate the Board exceeded its authority.

---

[8]    For example, Dr. Knapik speculated the Board may have wanted to break its contract with Dr. Powell for budgetary reasons, but he had no factual basis to support his theory and expressly qualified his statement as his "opinion . . . what I feel." In contrast, it is undisputed that Dr. Powell's contract with the hospital contained a termination clause, which either party could invoke to end the contract without cause.

# IV

## *Fair Procedure*

Dr. Powell challenges the fairness of Bear Valley's procedure, including various aspects of the JRC hearing, leading to his termination of privileges. He contends (A) the hearing officer erred by not allowing the JRC to decide whether his application for reappointment was not acted on; (B) the hearing officer acted as an advocate for the Board; (C) he was improperly denied access to relevant minutes of a Board meeting; (D) he was not treated fairly or with dignity by the hearing officer; (E) the hearing officer erroneously admitted testimony regarding settlement discussions; (F) the Board erred by affirming the JRC's decision; (G) the Board presented evidence on new charges not included in the notice of the charges against him; and (H) the Board was improperly influenced by the circumstances of the young patient at Brownwood. We conclude that Dr. Powell's contentions lack merit.

## A

Dr. Powell distinguishes (1) his "request" for advancement from provisional to active staff privileges from (2) his "reappointment" application, contending that the Board never acted on the latter and that Bradford prevented the JRC from deciding "whether his reappointment application . . . [was] not acted upon."

We conclude the Board's denial of Dr. Powell's request for advancement to active staff privileges necessarily denied his reappointment to the medical staff, the grounds for which were covered during the JRC hearing. According to the bylaws, to begin receiving any level of staff privileges, a physician applied for initial appointment. "Active" and

20

"Provisional," among others, were different categories of medical staff membership, to be determined at "appointment and each time of reappointment." A physician remained "in the provisional staff for a period determined by the [MEC]," and "[i]f the provisional staff member has satisfactorily demonstrated the ability to exercise the clinical privileges initially granted and otherwise appears qualified for continued medical staff membership, the member shall be eligible for placement in the active, courtesy, or consulting staff as appropriate, upon recommendation of the [MEC.]" A medical staff member had the option of requesting a change in medical staff status at any time, and in any event, was required to apply for reappointment at least 60 days prior to the expiration of his or her current appointment (at which time the MEC would recommend/determine a category of staff membership).

In this case, the MEC's last recommendation was for the Board to approve Dr. Powell's active staff privileges, retroactive to November 15, 2012, necessitating his reappointment to the medical staff since his provisional privileges had lapsed. Prior to voting on Dr. Powell's request for active privileges, the Board considered the materials he submitted with his reappointment application and gave him the opportunity to submit additional materials. Thus, in April 2013 the Board denied Dr. Powell's request for active staff privileges and his reappointment to the medical staff. The JRC found that the

Board's decision was reasonable and warranted and neither arbitrary nor capricious; there was nothing further for the JRC to decide.[9]

B

Dr. Powell contends that Bradford acted as an "advocate" for the Board. A hearing officer "shall not act as a prosecuting officer or advocate, and shall not be entitled to vote," but has the power to determine the relevancy of evidence, rule on requests for information, and to "impose any safeguards the protection of the peer review process and justice requires." (§§ 809.2, subds. (b)-(e), 809.3, subd. (a)(4); *Mileikowsky, supra,* 45 Cal.4th at p. 1275.) Moreover, "bias in an administrative hearing context can never be implied, and the mere suggestion or appearance of bias is not sufficient." (*Hongsathavij v. Queen of Angels etc. Medical Center* (1998) 62 Cal.App.4th 1123, 1142.)

Based on our review of the hearing transcript, Bradford did not act as an advocate. He had no financial or other interest in Bear Valley; was not compensated based on the outcome of the proceeding; and, when in his legal practice was hired to represent clients, he far more frequently represented physicians than hospitals. During the JRC hearing, Bradford ruled in Dr. Powell's favor on various issues and provided neutral explanations of legal principles. For example, out of fairness to Dr. Powell, Bradford prevented the

---

9    Dr. Powell also argues in a footnote, without citation to the record or any legal authority, that Bradford acted improperly by denying his request for a two-plus-two dispute resolution process. The argument is forfeited. (*Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 589 ["An appellant who fails to cite accurately to the record forfeits the issue or argument on appeal that is presented without the record reference."].) In any event, he has failed to establish that a two-plus-two between the MEC and Board would have obviated the need for a hearing or resulted in a favorable outcome for him.

Board from (1) presenting evidence regarding any ongoing documentation issues by Dr. Powell in patient charts that were not identified in the notice of charges, and (2) amending the notice of charges after the hearing was underway. Bradford occasionally asked clarifying questions of the witnesses, which we attribute to the parties' unfamiliarity with evidentiary rules or witness examinations. In those instances, Bradford was acting for the benefit of the JRC. On other occasions, Bradford asked clarifying questions because he needed pertinent information to make an evidentiary ruling. He was not acting as an advocate.

As one example of alleged advocacy, Dr. Powell asserts that Bradford improperly allowed a witness to testify regarding the hospital's internal process of how Dr. Powell's charts were selected to be sent out for external review and the total number of reviewed charts. Bradford did not act as an advocate in overruling Dr. Powell's objections; the JRC was entitled to review his charts with some procedural context.

As another example of alleged advocacy, Dr. Powell claims that Bradford admitted testimony regarding settlement discussions between Dr. Powell and Bear Valley. In trying to establish a timeline of events, the Board elicited testimony regarding settlement talks, and Dr. Powell did not assert a timely objection. When Dr. Powell did object, Bradford ruled that any settlement discussions were not relevant.[10] The brief references to settlement discussions were not likely to cause prejudice since they merely showed that the parties tried but were unable to informally resolve their dispute.

---

[10]     Incidentally, Bradford's colloquy with the parties and ruling on the issue were done outside of the panel's presence.

After reviewing the record, including all examples identified by Dr. Powell in his briefs, we conclude that Bradford acted impartially and within the scope of his statutory authority.

C

Dr. Powell contends he was improperly denied access to minutes of a Board meeting on the ground the minutes were protected under the Brown Act (Gov. Code, § 54950 et seq.). He argues that not having documentation of the closed-session meeting was prejudicial because the Board "selectively" testified about what happened during the meeting. His contention lacks merit. Several Board members testified about the meeting based on their recollection; Dr. Powell had ample opportunity to test their recollection and elicit further testimony through cross-examination. Moreover, the minutes of the Board's meetings do not reflect any internal discussions during closed sessions and would have been of no use to Dr. Powell for his stated purpose. Bradford did not commit prejudicial error.

D

With virtually no citations to the record, Dr. Powell contends he was not treated fairly or with dignity by the hearing officer. As one example, Dr. Powell claims that Bradford made him explain a witness's anticipated testimony even though Bear Valley did not object to the witness being called. Regardless of whether Bear Valley objected, Bradford could ensure that the hearing was proceeding efficiently and that any proffered evidence was relevant. Bradford also questioned the Board on certain witnesses' anticipated testimony. He did not hold Dr. Powell to a higher standard.

24

E

Dr. Powell contends that Bradford erroneously admitted testimony regarding settlement discussions, citing one document that contains Dr. Powell's settlement demand. As discussed *ante*, on Dr. Powell's objection, Bradford ruled that settlement discussions were not relevant and any limited references to settlement were not prejudicial. Regarding Dr. Powell's settlement demand, the document was not admitted in evidence for the JRC's review.

F

Dr. Powell contends the Board erred by affirming the JRC's decision. We conclude he waived this argument by expressly agreeing to the Board's resolution to affirm the JRC's decision and deem his exhaustion of administrative remedies so that he could directly petition the superior court for a writ of mandate. (See *Blumberg v. Minthorne* (2015) 233 Cal.App.4th 1384, 1391 [voluntary agreement to comply with an order waives argument that party was not required to comply with the order].) Dr. Powell cannot now argue the Board erred by doing something he asked the Board to do.

G

Dr. Powell contends the Board included new charges against him during the hearing in the form of new patient charts, which were not part of the statement of charges. He is wrong. The statement of charges, as amended, notified Dr. Powell of eight problematic charts, by chart number. To the extent a witness or documentary exhibit referenced other chart numbers, it was to show that other charts had been sent out

25

for external peer review and returned with satisfactory scores.  The Board did not base its adverse decision against him on those other satisfactory charts.

H

Dr. Powell lastly contends the Board considered irrelevant evidence regarding, and was improperly influenced by the circumstances of, the young hernia patient at Brownwood.  We reject his contention.  The Texas court opinion and a report by Brownwood's fair hearing committee were relevant to whether Dr. Powell misrepresented the reasons for his termination of privileges.  The Brownwood patient's case illustrated how Dr. Powell's lack of candor and/or integrity could result in adverse patient outcomes.  There is no evidence in the record that the Board acted irrationally.

In summary, Bear Valley provided Dr. Powell a fair procedure in denying his request for active staff privileges and reappointment to the medical staff.

DISPOSITION

The judgment denying Dr. Powell's petition for writ of mandate is affirmed. Costs on appeal are awarded to Bear Valley.


O'ROURKE, J.

WE CONCUR:


NARES, Acting P. J.


DATO, J.

Filed 4/16/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ROBERT O. POWELL,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>BEAR VALLEY COMMUNITY HOSPITAL et al.,<br><br>    Defendants and Respondents. | D072616<br><br><br><br>(Super. Ct. No. CIVDS1410052)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed March 26, 2018, was not certified for publication. It appearing the opinion meets the standards specified in California Rules of Court, rule 8.1105(c), the requests made pursuant to California Rules of Court, rule 8.1120(a) for publication are GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and ORDERED that the words "Not to be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein to be published in the Official Reports.

NARES, Acting P. J.

Copies to: All parties