Filed 10/22/19; Modified and Certified for Publication 11/20/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| SUNDAR NATARAJAN, | C085906 |
| Plaintiff and Appellant, | (Super. Ct. No. STK-CV-UWM-2016-4821) |
| v. | |
| DIGNITY HEALTH, | |
| Defendant and Respondent. | |

Plaintiff Sundar Natarajan filed a petition for a writ of administrative mandate to overturn the November 2015 revocation of his staff membership and privileges at St. Joseph's Medical Center of Stockton (St. Joseph's), the fictitious name of an entity that defendant Dignity Health owned and operated.[1]  In September 2017, the trial court denied the petition and entered judgment for defendant.

---

[1] Although not strictly "administrative" in the classic sense, review pursuant to this writ is appropriate for the internal peer review procedures of a hospital.  (*Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 200.)

1

Plaintiff does not contest the sufficiency of the evidence in support of the internal decision; rather, his challenge rests on claims of a denial of procedural due process, and seeks to nullify any preclusive effects the internal decision might have on any subsequent action in court (see, e.g., *Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235, 243-244), although he does not explain how he would be entitled to this requested relief without a remand for further internal proceedings.

He argues the circumstances of the hearing officer's relationship with defendant gave rise to an unacceptable risk of bias from a pecuniary interest in future employment with defendant, and the internal decision revoking his staff membership and privileges did not apply objective standards.[2] We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Given the limited nature of the appellate challenge, we omit frequent references in the briefing of both parties to the substantive evidence underlying the decision to revoke plaintiff's staff privileges and membership. We therefore peel from defendant's statement of facts a heavy overlay of disparagement of plaintiff's competence, as well as plaintiff's self-laudatory brush strokes. We also prune plaintiff's references to *other* potential biases in the process leading to the revocation, beyond the claimed pecuniary bias on the part of the hearing officer in favor of defendant that plaintiff argues on appeal. Neither party contests the factual accuracy of the trial court's statement of decision, so we draw most of our background facts from that source, as well as mutually agreed facts in the briefing. (*Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 175, fn. 3.)

---

[2] We have allowed a number of amici curiae to file briefs. While some of the briefing provides food for thought, ultimately we are not persuaded that we should allow the expansion of the issues beyond those as the parties have framed them. (*City of Brentwood v. Campbell* (2015) 237 Cal.App.4th 488, 493, fn. 6.)

2

Plaintiff is a hospitalist, which (as the name suggests) is a specialty that oversees in-patient care at hospitals on behalf of primary care physicians. He was formerly the director of the hospitalist program at St. Joseph's in 2007. He left this position in 2008 to set up a competing hospitalist practice program of his own.

In 2013, the medical staff of St. Joseph's (a self-governing entity)[3] initiated an investigation into plaintiff's procedures. Beginning in 2011, plaintiff had been having persistent problems in completing medical records in a timely fashion, which led to a warning meeting with the staff's executive committee. He acknowledged the problem and resolved to improve; however, by 2013 the issue was still continuing. The chair of the department of medicine notified plaintiff in August 2013 that a committee would be investigating the timeliness of his record-keeping. In addition, the investigatory committee was concerned with whether plaintiff was responding in a timely fashion when on call, and the length of his patients' hospitalizations. The results of the investigation were reported to the staff's executive committee, with a recommendation to revoke plaintiff's staff membership and privileges. The executive committee adopted the recommendation.

Plaintiff appealed this recommendation to the peer review committee. The staff had delegated to the president of St. Joseph's the authority to appoint a hearing officer for

---

[3] "Hospitals are required by law to have a medical staff association [that] oversees [the] physicians . . . given staff privileges to admit patients and practice medicine in [its] hospital. [This] . . . is a separate legal entity . . . [that] is required to be self-governing and independently responsible from the hospital for its own duties and for policing its member physicians." (*Hongsathavij v. Queen of Angels Etc. Medical Center* (1998) 62 Cal.App.4th 1123, 1130, fn. 2 (*Hongsathavij*).) The medical staff has the primary duty of peer review. (*El-Attar v. Hollywood Presbyterian Medical Center* (2013) 56 Cal.4th 976, 992 (*El-Attar*).) The administration cannot act with respect to staff privileges without a recommendation from the peer review panel. (*Mileikowsky v. West Hills Hospital & Medical Center* (2009) 45 Cal.4th 1259, 1272 (*Mileikowsky*).)

this process,[4] who generally oversees the peer review proceedings in a neutral role, makes evidentiary rulings, and participates in the committee's deliberations as a legal advisor, without a vote in the committee's decision (a process somewhat akin to the relationship of a trial court and a jury on issues of fact[5]).  (See Bus. & Prof. Code, § 809.2, subd. (b) ["the hearing officer shall [not] gain [any] direct financial benefit from the outcome, shall not act as a prosecuting officer or advocate, and shall not be entitled to vote"].)[6]  The president selected Robert Singer as the hearing officer.

The hearing officer was a semiretired attorney whose income consisted entirely of acting as a hearing officer in peer reviews.  In plaintiff's voir dire of the hearing officer pursuant to the staff bylaws and section 809.2, the hearing officer noted that he acted in this role for Kaiser and Sutter hospitals with almost the same frequency as with Dignity Health hospitals.  He had been involved in seven previous peer proceedings at other Dignity Health hospitals and was appointed in two more after his appointment in the present matter, but not otherwise in a peer proceeding at St. Joseph's.[7]  The hearing officer could not recall a physician prevailing in any of the matters in which he presided. To avoid the appearance of bias, he had asked that the contract appointing him as hearing officer include a provision barring St. Joseph from appointing him in another peer review

---

[4]  This was authorized under the staff bylaws, as permitted by law.  (*El-Attar*, *supra*, 56 Cal.4th at p. 989.)

[5]  E.g., *Mileikowsky*, *supra*, 45 Cal.4th at p. 1269; *Powell v. Bear Valley Community Hospital* (2018) 22 Cal.App.5th 263, 274-275 (*Powell*) (both noting statutory description of review panel as trier of fact).

[6]  Undesignated statutory references are to the Business and Professions Code.

[7]  In a deposition of the hearing officer taken in connection with the mandate petition, the hearing officer acknowledged slightly more than half of his income in *2011* and *2014* was derived in peer reviews from defendant-affiliated entities and ranged from 0.9 to 24 percent in other years between *2009 and 2013*.

4

matter for three years, though this did not bar him from acting as a hearing officer in peer reviews at other Dignity Health hospitals. At the conclusion of the voir dire process, the hearing officer denied plaintiff's motion to recuse him, finding that "a factual showing has not been made, and there is no legal justification" for disqualification.

Following a nearly year-long series of evidentiary hearings (generating an administrative record of nearly 10,000 pages and a clerk's transcript of nine volumes), the review committee issued a decision in June 2015, adopting the executive committee's recommendation to revoke plaintiff's staff membership and privileges. In preliminary remarks, it noted staff was expected under the staff bylaws to provide "efficient and high[-]quality care" that specifically includes completing "in a timely fashion the medical and other records for all patients for whom they provide care in the hospital." It concluded "unanimously" that plaintiff "did not meet the standards, policies, and rules applicable as a member of the Medical Staff, and did not exhibit a level [of] performance consistent with efficiency and high[-]quality medical care . . . ." Specifically, plaintiff's records were inadequate in content to the point where even members of the review committee could not readily understand them; he was in violation of Medicare limitations on verbal orders; his patient stays were longer than hospital averages or Medicare standards; he failed to respond promptly to pages from staff; he did not efficiently use consultants; and his shortcomings (which were not premised on any finding of *clinical* incompetence) were both pervasive and unlikely to improve.

Pursuant to the procedure in the staff bylaws, plaintiff appealed the decision of the review committee to St. Joseph's community board (the governing board of the hospital), which assigned the appeal pursuant to the bylaws to a three-person subcommittee. Plaintiff did not contest the sufficiency of the evidence, contending instead that he was denied a fair hearing. Accordingly, the community board's subcommittee did not in its decision address the factual basis for the review committee's decision itself, instead

5

incorporating the factual findings.[8]  By a "majority vote," the subcommittee affirmed the decision of the review committee.  The community board issued a resolution en banc approving and adopting the decision of the subcommittee.  Plaintiff thereafter initiated the present mandate proceedings in superior court.

## DISCUSSION

**1.0     The Employment of the Hearing Officer did not Violate the Principles of Fair Procedure**

The primary purpose in peer review of the revocation of staff membership and privileges is the protection of the public, which is not outweighed by a physician's procedural protections from arbitrary or discriminatory actions.  (*El-Attar*, *supra*, 56 Cal.4th at p. 988; *Medical Staff of Sharp Memorial Hospital v. Superior Court* (2004) 121 Cal.App.4th 173, 182.)

As we emphasized at length 14 years ago (in a decision in which plaintiff's present attorney participated), where the peer review process of a *private* institution is involved, we are concerned only with the principles under common law of *fair procedure* and *not* the constitutional prescriptions of *due process* (which apply only to public entities). (*Kaiser Foundation Hospitals v. Superior Court* (2005) 128 Cal.App.4th 85, 97, fn. 12, 101-102, & fn. 15 (*Kaiser*).)  Thus, "to the extent [plaintiff] relies on cases involving the constitutional right to 'due process,' [his] reliance is misplaced." (*Id.* at p. 102.)  Other cases since the early 1980's have made the same point repeatedly.  (*Powell*, *supra*, 22 Cal.App.5th at p. 274; *Dougherty v. Haag* (2008) 165 Cal.App.4th 315, 317; *Goodstein v. Cedars-Sinai Medical Center* (1998) 66 Cal.App.4th 1257, 1265; *Anton v. San Antonio*

---

[8]  For this reason, although it is the decision of the community board and not the peer review committee that is the subject of administrative mandate proceedings in the trial court (*Hongsathavij*, *supra*, 62 Cal.App.4th at pp. 1136, 1143), our analysis of whether objective standards underlay the revocation must perforce make reference to the decision of the peer review committee in the Discussion.

*Community Hospital* (1982) 132 Cal.App.3d 638, 653-654 & fn. 4; *Applebaum v. Board of Directors* (1980) 104 Cal.App.3d 648, 657 (*Applebaum*).)

The former common law in California involving fair procedure was supplanted in 1989 with the enactment of section 809 et seq., part of a *comprehensive* statutory scheme for medical licensing intended to exercise the state's right to opt out of 1986 federal legislation in which the Legislature perceived deficiencies. (*El-Attar*, *supra*, 56 Cal.4th at p. 986 [rights "originally" grounded in common law], 988; *Mileikowsky*, *supra*, 45 Cal.4th at p. 1267; *Powell*, *supra*, 22 Cal.App.5th at p. 273; *Kaiser*, *supra*, 128 Cal.App.4th at p. 97; 100, fn. 13; § 809, subd. (a); but see *El-Attar* at pp. 990, 991, 994 [*seeming* to suggest that principles of common law can apply unless expressly contrary to § 809 et seq.].) In the present case, whether or not the common law is fully superseded is ultimately only of academic interest, as neither party has identified any pre-1989 decisions addressing the central issue on appeal.

There is a core protection even under fair procedure of an impartial decider. (*El-Attar*, *supra*, 56 Cal.4th at pp. 987, 995 [right to neutral adjudicator among core protections under fair procedure]; *Lasko v. Valley Presbyterian Hospital* (1986) 180 Cal.App.3d 519, 528-529 [impartial adjudicator must be included in fair procedure of private institution] (*Lasko*); *Hackethal v. California Medical Assn.* (1982) 138 Cal.App.3d 435, 442 [same] (*Hackethal*); *Applebaum*, *supra*, 104 Cal.App.3d at p. 657 [notice of charges and reasonable ability to respond "are basic to both sets of rights"]; *id.* at p. 658 ["inconceivable" that fair procedure would not also include the right to an impartial adjudicator]; cf. *Kaiser*, *supra*, 128 Cal.App.4th at p. 104 [core protections are "fundamental to *any* fair administrative remedy, whether the remedy is governed by principles of 'fair procedure' or 'due process' "].)

Notwithstanding this plain demarcation distinguishing between constitutional due process and fair procedure, plaintiff takes arms against the dichotomy. Relying on the body of case law involving *constitutional due process* that is not directly applicable,

plaintiff extracts a standard applied to adjudicators. *Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017 (*Haas*) concluded that this right to an impartial adjudicator *under principles of constitutional due process* is violated where one party has the unilateral right to appoint an ad hoc adjudicator to preside over the dispute[9] where the adjudicator has the prospect of *future* employment[10] in disputes involving the party because this gives rise to the *risk* of a pecuniary risk in the outcome of the case. (*Id*. at p. 1020.) Under the principle of *due process*, "courts have consistently recognized" that this practice under which a party may select an adjudicator whose income is dependent on the volume of cases decided "offends the Constitution" because there is a resulting *temptation* based on pecuniary interest (stemming from the rational self-interest of the selecting party to choose a favorable adjudicator), a risk that incurs "the most unequivocal condemnation and the least forgiving scrutiny" under the "constitutional principles governing disqualification for financial interest" (*id.* at pp. 1024-1025, 1027, 1030-1031); while due process may be flexible, it is strict with respect to pecuniary interests (*id*. at p. 1037). In the context of *due process*, it is the appearance of a reasonable likelihood of possible bias, not any actual bias, that governs.[11] (*Id*. at

---

[9] The unilateral right to appoint an adjudicator is not otherwise *of itself* any violation of the core protection of an impartial adjudicator. (*El-Attar*, *supra*, 56 Cal.4th at pp. 987 [citing *Anton v. San Antonio Community Hospital* (1977) 19 Cal.3d 802], 996; *Kaiser*, *supra*, 128 Cal.App.4th at pp. 109-110; see *Haas*, *supra*, 27 Cal.4th at p. 1031 [same rule under due process or fair procedure].)

[10] We have held that this impermissible risk of a pecuniary interest in outcome under *due process* is not established simply with evidence of *past* employment. (*Thornbrough v. Western Placer Unified School Dist.* (2013) 223 Cal.App.4th 169, 186-190.) Thus, the present hearing officer's past employment with defendant-controlled entities (and income) is irrelevant.

[11] By contrast, for purposes of *fair procedure* a court does *not* presume bias based on a mere appearance absent a factual showing. (*Powell*, *supra*, 22 Cal.App.5th at p. 280;

pp. 1026, 1034; see *Applebaum*, *supra*, 104 Cal.App.3d at p. 657 [as a matter of *constitutional* law, even possibility of any unfairness is to be avoided].)[12]

The basket in which plaintiff's reliance on *due process* rests is *Yaqub v. Salinas Valley Memorial Healthcare System* (2004) 122 Cal.App.4th 474 (*Yaqub*).  Without any analysis of the distinction between constitutional due process and fair procedure or citation to the controlling statute (§ 809.2), *Yaqub* simply applied the *Haas* holding (that applied the "least forgiving" scrutiny under due process to claims of pecuniary interest [*Haas, supra*, 27 Cal.4th at p. 1025]) to a medical facility[13] in the context of a retired justice being hired on an ad hoc basis in peer review hearings, and reversed because the appointment procedures "were not consistent with the *appearance* of impartiality." (*Yaqub* at pp. 481, 485-486, italics added.)  Given *Yaqub*'s failure even to consider the distinction between the strict standard under due process for pecuniary interest and the statutory restatement of the principles of fair procedure limited to a *direct* financial interest in the outcome under section 809.2, we consider *Yaqub* to be a deviation from the strong current of precedent and therefore " ' "a derelict on the waters of the law" ' " that we have not found to be followed on this point in any published decision.  (*In re Watford* (2010) 186 Cal.App.4th 684, 691.)[14]

---

*Hongsathavij*, *supra*, 62 Cal.App.4th at p. 1142; *Rhee v. El Camino Hospital Dist.* (1988) 201 Cal.App.3d 477, 494.)

[12]  In *Kaiser*, we *assumed* that even if *Haas* applied, plaintiff had forfeited a claim of bias because he failed to raise it in the internal proceedings.  (*Kaiser*, *supra*, 128 Cal.App.4th at pp. 109-110.)

[13]  *Yaqub* in fact *never identifies* whether the medical facility is private or public.  Citing a Web site without any request or demonstration that this is a permissible source of data for this court via judicial notice, defendant asserts that the medical facility was a public institution.  We do not need to resolve the question.

[14]  Present counsel for plaintiff invoked *Yaqub* in his petition for review in *Kaiser* and faulted the *Kaiser* panel for failing to address *Yaqub* explicitly despite the *Yaqub* decision

Absent the more exacting established constrictions of constitutional due process in the context of pecuniary interest, the Legislature can frame the criteria for impartiality of an adjudicator as it wishes for purposes of the fair procedure a private entity must provide, without being required to meet the *constitutional* threshold for public entities. We do not presuppose that the use some 13 years later of the word "direct" in *Haas* (*Haas*, *supra*, 27 Cal.4th at p. 1031), to describe the *potential* for partiality in repeat ad hoc employment under due process has any bearing on the statutory phrase "direct financial benefit" (§ 809.2, subd. (b)), enacted in 1989 for purposes of fair procedure. Rather, as the common law had framed examples of biased adjudicators antedating the statute, situations in which adjudicators had a demonstrated unacceptable risk of bias as the result of a tangible interest (as opposed to an expectancy) included those with a *present* pecuniary interest (such as *competitors*) or other personal stake in the outcome; *personal* "embroilment" with the person whose right is at issue (including having been the subject of criticism from the person); prior participation in the process as accuser, investigator, finder of fact, or initial decisionmaker; and adjudicators who act on evidence that had not been subject to adversarial procedures. (*Lasko*, *supra*, 180 Cal.App.3d at pp. 529-530; *Hackethal*, *supra*, 138 Cal.App.3d at p. 443; *Applebaum*, *supra*, 104 Cal.App.3d at pp. 657-658.) Neither party has identified a case decided under fair procedure in which the mere *possible* interest in future employment as an adjudicator was (or was not) a basis for setting aside a decision. In the face of the common law in 1989, we do not believe that the Legislature intended "direct financial benefit" to include an even more ephemeral potential for bias than *Haas*—where the county was at least the only player in the hearing officer game—as opposed to a situation such as the present case in which the

---

being brought to its attention.   (We take judicial notice sua sponte of our records in *Kaiser*.)   The Supreme Court denied the petition.   (*Kaiser*, *supra*, 128 Cal.App.4th at pp. 90, 115.)   Our express repudiation of *Yaqub* here illuminates the absence of any need on our part to have addressed *Yaqub* in *Kaiser*.

10

hearing officer can pursue employment with the *other* hospital networks that have made use of his services. (Cf. *Powell*, *supra*, 22 Cal.App.5th at p. 280 [no pecuniary interest where peer review income derived from sources other than hospital, i.e., representing plaintiffs as well].) *Had* that been the intent, the Legislature would have described the disqualifying financial benefit as "potential" or "possible," rather than "direct."

Given that we do not find that plaintiff has established a direct financial interest on the part of the hearing officer such that we should set aside the decision of defendant to revoke his staff membership and privileges, we do not need to address the rejoinders of plaintiff to defendant's alternative arguments for upholding the participation of the hearing officer, or plaintiff's immaterial assertion that we should consider potential employment with defendant's hospitals as a whole as opposed to only St. Joseph's, or plaintiff's footnoted suggestions in dictum that rulings of the hearing officer prove actual bias. We thus proceed to plaintiff's remaining argument that the decision to rescind his staff membership and privileges did not employ objective standards.

## 2.0    The Decision was Based on Objective Standards

Plaintiff contends the revocation did not apply an objective standard in basing it on his untimely completion of medical records. (Although he alludes to other grounds in the decision—untimely responses to pages, late rounds, excessive use of verbal rather than written orders, the manner of his use of consultants, and the length of his patients' hospital stays—these are presented in a half-paragraph of conclusory assertions, and we thus disregard them for want of adequate development of this aspect of his argument. (*Sourcecorp, Inc. v. Shill* (2012) 206 Cal.App.4th 1054, 1061.)) In this regard, he contends his record-keeping shortcoming cannot be judged under a vague standard of failure to provide high-quality medical care, absent any proof that it resulted in an actual adverse impact on any particular patient's care.

Although plaintiff seems to suggest that the *explicit* provisions of the bylaws under which the "basic responsibilities" of staff include providing patients with "high[-]quality

11

care," including the preparation and completion of "medical and other required records" in timely fashion, is not sufficiently objective, his cited authority is to the contrary. *Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 626-629 concluded that a bylaw responsibility to work with others is sufficiently free from vagueness if tied to proof of a substantial danger that failure to meet this standard would result in a failure to provide quality medical care.  (Accord, *Gaenslen v. Board of Directors* (1985) 185 Cal.App.3d 563, 569 [willingness and ability to provide high-quality medical care not vague; further detailed description of prohibited conduct impossible or undesirable].)  Moreover, proof of actual adverse impact is not required.  (*Miller*, at p. 629 [sufficient in denial of admission to staff that applicant "might" not provide quality care]; *Marmion v. Mercy Hospital & Medical Center* (1983) 145 Cal.App.3d 72, 87-88 [potential danger posed by insubordinate resident].)  Plaintiff's citation to *Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 678, for the purported principle that a hospital must show actual resulting danger to patients is utterly inapposite, as the court was discussing the reason why a *whistleblower* alleging retaliation should not be subjected to the same exhaustion requirement before resort to court after an adverse internal decision; the court did not purport to set forth any principle regarding the need for actual danger as opposed to potential danger.

In the present case, the trial court noted that plaintiff did not provide any evidence that he was *arbitrarily* subject to this record-keeping obligation compared with other physicians.  It also noted that the bylaws did not include any provision for progressive discipline.  It is thus sufficient under the objective criterion of the timely completion of accurate medical records toward the end of high-quality medical care for defendant to find that plaintiff was unable or unwilling to comply despite past efforts to encourage him to remedy his shortcomings, resulting in records that successor physicians would have trouble interpreting in following up on plaintiff's care.

12

## DISPOSITION

The judgment is affirmed.  Defendant is awarded its costs of appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


        /s/

        Butz, J.


We concur:


/s/

Hull, Acting P.J.


/s/

Renner, J.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| SUNDAR NATARAJAN, | C085906 |
| Plaintiff and Appellant, | (Super. Ct. No. STK-CV-UWM-2016-4821) |
| v. | |
| DIGNITY HEALTH, | ORDER MODIFYING OPINION AND DENYING REHEARING, CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

APPEAL from a judgment of the Superior Court of San Joaquin County, Barbara A. Kronlund, Judge. Affirmed.

Law Offices of Stephen D. Schear, Stephen D. Schear; Justice First and Jenny Chi-Chin Huang for Plaintiff and Appellant.

Manatt, Phelps & Phillips, Barry S. Landsberg, Doreen W. Shenfeld, Joanna S. McCallum, and Craig S. Rutenberg for Defendant and Respondent.

Davis Wright Tremaine and Terri D. Keville for John Muir Health, Kaiser Foundation Hospitals, MemorialCare Health System, Providence St. Joseph Health, Sharp Healthcare, Sutter Health, and The Regents of the University of California as Amici Curiae on behalf of Defendant and Respondent.

Arent Fox, Lowell C. Brown and Diane Roldán for California Hospital Association as Amicus Curiae on behalf of Defendant and Respondent.

Nossaman, Carlo Coppo; Patrick K. Moore Law Corporation, Patrick K. Moore; Hanson Bridgett and Glenda M. Zarbock as Amici Curiae on behalf of Defendant and Respondent.

John D. Harwell as Amicus Curiae on behalf of Defendant and Respondent.

Francisco J. Silva and Long X. Do for California Medical Association as Amicus Curiae.

THE COURT:

It is ordered that the opinion filed herein on October 22, 2019, be modified as follows:

1.  On page 2, in the first full paragraph the words "although he does not explain how he would be entitled to this requested relief without a remand for further internal proceedings" are deleted and the preceding comma is replaced with a period.  As modified, this paragraph reads:

> Plaintiff does not contest the sufficiency of the evidence in support of the internal decision; rather, his challenge rests on claims of a denial of procedural due process, and seeks to nullify any preclusive effects the internal decision might have on any subsequent action in court (see, e.g., *Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235, 243-244).

2.  On page 3, in the first sentence of the second full paragraph, beginning with "In 2013," the word "initiated" is replaced with the word "conducted."

3.  On page 3, in the third sentence of the second full paragraph, the words "by 2013," and "was still" are deleted.  The third and fourth sentences are combined by replacing the

2

words "continuing.  The" with "continued, and the" modifying these sentences to read:

He acknowledged the problem and resolved to improve; however, the issue continued, and the chair of the department of medicine notified plaintiff in August 2013 that a committee would be investigating the timeliness of his record-keeping.

4.  On page 4, in the first full paragraph, the following sentence is deleted:  "The hearing officer could not recall a physician prevailing in any of the matters in which he presided."

This modification does not change the judgment.

Appellant's petition for rehearing filed on November 4, 2019, is denied.

The opinion in the above-entitled matter was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

FOR THE COURT:


  /s/
Hull, Acting P.J.



  /s/
Butz, J.



  /s/
Renner, J.

3